## Joseph G. Farr v. John H. Rasco.

Under the general issue, in an action of slander, the defendant may show in miti-
gation of damages, that previous to the publication of the slanderous words by
himself, reports to the same effect were in common circulation in the vicinity
of the plaintiff's residence, and were communicated to the defendant.

*Heard October 29th and 80th. Decided November 19th.*

Error to Oakland Circuit.

The action was for slander. In the declaration the
defendant was in substance charged with having published
that the plaintiff, who is a married man, was the father
of a negro or colored child, and had committed adultery.
Plea, the general issue. On the trial, the plaintiff intro-
duced testimony to prove the uttering and publication by
the defendant of the words as alleged against him in the
declaration, and that the plaintiff resided in Farmington,
some fifteen miles distant from Commerce, in said county,
where the defendant resided. The plaintiff introduced a wit-
ness who testified, in substance, that she knew the parties:
that the said defendant, about a year ago, in the road in
front of witness's house, asked her if she had heard that
elder Rasco's nigger wench had got a baby. She said no.
He said the wench had a baby three weeks old, very light
skinned, fine hair, blue eyes. It looked exactly like the
elder, and had the elder's nose. She said she did not be-
lieve any such thing of the elder. He replied that the
elder was a very bad man, and that we were all deceived
in him.

On her cross examination she testified that she did not
know as the defendant told her who told him, but he said
he had seen a gentleman from Farmington, who had told
him it was so.

The plaintiff having rested, the defendant called one
Lowe as a witness, who on being interrogated by the de-
fendant, the answer was objected to by the plaintiff. The

defendant then stated to the court that he proposed to show, in mitigation of damages, by this and other witnesses, that the story of the plaintiff being the father of a mulatto or colored child was rife in Farmington, where the plaintiff lived, and the vicinity, and was reported to the defendant previous to the publication by him of the words as proven by the plaintiff. To this evidence the plaintiff objected, and the court sustained the objection. The defendant then offered to prove by this witness and others that, previous to the publication by the defendant, there were in common circulation, in the town and vicinity where the plaintiff resided, the same reports of and concerning the plaintiff as are alleged as having been spoken by the defendant, and that they were communicated to the defendant before uttering and publishing the words which were proven against him by the plaintiff, — which proof was offered in mitigation of damages. To this proof the plaintiff objected, and the court sustained the objection. The case being submitted, the jury returned a verdict in favor of the plaintiff.

Defendant brought error.

*M. L. Drake,* for plaintiff in error, referred to 2 *Greenl. Ev.* § 424; *Bull. N. P.* 9; 1 *M. & S.* 285; 2 *Camp.* 251; 5 *Ohio St. R.* 293; 20 *N. H.* 561; 3 *Conn.* 466; 18 *Conn.* 464; 29 *Me.* 233; 4 *Harr.* 520; 1 *Bin.* 85, 90; 1 *Blackf.* 369; 3 *Dana,* 432; 1 *Port. Ala.* 322; 1 *Root,* 459; 1 *B. Monr.* 166; 2 *McCord,* 285; 10 *Rich. (Law)* 414; 21 *Barb.* 148; 8 *Wend.* 573; 4 *Mich.* 409; 3 *Ohio,* 270; 1 *N. & McC.* 268; 11 *N. Y.* 347; 7 *Cow.* 613; 6 *C. & P.* 475; 2 *B. Monr.* 210; 1 *Ind.* 544; 7 *Blackf.* 270; 4 *N. H.* 110; 2 *Whart.* 313.

*Crofoot & Dewey,* for defendant in error, while admitting a great conflict of opinion in the cases, both in England and America, argued that by far the greater weight of authority is opposed to the admission of such evidence in mitigation of damages: — 2 *Stark. on Slander (by Wend.)*

88 *to* 98; 2 *Greenl. Ev.* §§ 275, 424. But the defendant below is hardly within the ruling of any of the cases cited.

To say that a story was rife — does not mean that it was a general report. It means only that it existed. To say that reports were in *common circulation*, may be nearly synonymous with the expression that the reports were general; but yet it does not appear from the proposition that these reports had gained any credence at all, nor that they had disparaged the character of the plaintiff; nor that a general suspicion had obtained of the plaintiff's guilt; and if with their *common circulation* they had not raised even a suspicion that the plaintiff was guilty, it can hardly be said that his character was so injured as to mitigate the damages.

If evidence of reports are admissible at all, it would seem that they must be such as to create a general *suspicion* of the guilt of the plaintiff, and thereby have damaged his character, as held in 4 *Mich.* 409, 412, 413. There being no offer or pretence that this evidence was to rebut the presumption of malice, it could only be claimed to show disparaged fame, when if received it would show no such thing.

Greenleaf (*Vol.* 2, § 275) in reviewing the cases admitting such proof, says, that when the evidence is offered, all intention of proving *the truth* of the charge must be *expressly disclaimed.*

The following cases hold distinctly that such evidence is inadmissible for any purpose: 1 *Root,* 346; 1 *Mo.* 254; 6 *Mass.* 514; 6 *N. H.* 413; 1 *Pick.* 18; 3 *Pick.* 376; 7 *Met.* 86, 91; 5 *Cow.* 499; 8 *Cow.* 214; 4 *Wend.* 659; 8 *Wend.* 582, 583, 602; 8 *Wend.* 301; 19 *Wend.* 296; 14 *Ohio,* 418; 5 *Watts,* 439; 5 *Fost.* 318.

MANNING J.:

It would be useless to attempt to reconcile the numerous conflicting cases cited and commented on by counsel

on the argument. In such circumstances, the court must be governed in the conclusion it may come to more by legal principles than by reported cases, which frequently are but evidence of the application of such principles to a particular state of facts. It sometimes happens that evidence which is admissible for one purpose is wholly inadmissible for another and different purpose. In such cases to reject the evidence entirely, might work as great injury to the party offering it, as its admission could possibly do to the opposite party. To obviate this difficulty as far as practicable, the evidence is admitted with instructions to the jury to use it for a particular purpose, and that only, and not for all the purposes of the suit. Once before the jury, it may, notwithstanding the instructions of the court, have more or less weight with them on other parts of the case. Of the two evils, the rejection of the evidence entirely, or its admission for a particular purpose, with instructions to the jury to disregard it for any and all other purposes, the latter is supposed to be least objectionable, and therefore has been adopted by courts as the rule in all such cases. Now we can not but think the great contrariety of decisions on the question before us has arisen, in part, from overlooking this rule; and in part from inadvertence to the two distinct elements that enter into and form the basis for damages in this class of cases. The fair reputation of the person slandered, and the *quo animo* of the slanderer, are, we believe, admitted by all of the cases to be taken into consideration by the jury is assessing the damages. But in some of the reported cases where the defendant, to disprove a malicious intent, has offered to show what he said was public rumor, and was spoken of by him as such, or had been told to him by another whose name he mentioned at the time, the evidence has been rejected on one or both of the following grounds, viz: 1st. That it did not prove the truth of the words uttered; or, 2d. That to ad-

mit it would be allowing the slander to be given in evidence to asperse the plaintiff's reputation, and to the extent of the injury it had done his reputation, to lessen his claim for damages. Both reasons are fallacious, as the evidence is not offered for either of those purposes, but to show the *quo animo* of the defendant — whether in uttering the words spoken by him he was prompted by feelings of hostility to the plaintiff, or by a gossiping tongue, or by nothing more than the common inclination prevalent among friends and associates when together to speak of the news of the day. Not to admit the evidence would be placing one who should read a slanderous article from a newspaper, in the presence and hearing of others, on a level with the author of the slander. The law is too discriminating in meting out justice to lay itself open to the charge of so gross a blunder. It is said the slanderer may secretly rejoice within himself at the slanderous rumor, or at the defamatory tale that has been told him, and use it as a cloak to conceal the stiletto with which he stabs the reputation of another ; or that he may have been the author of the rumor he asks the law to interpose as a shield between him and his adversary, when called on to account for his conduct. This is one extreme; the other may be found in the case already mentioned of reading from a newspaper. Shall both be mulcted in the same amount of damages ? Is the *quo animo* the same ? Does the law make no distinction between them ? And between these extremes every variety of cases may be found, filling up the intervening space. To enable the jury to do justice in each, the facts attending and surrounding each must be permitted to go before them, with instructions from the court to take them into consideration in assessing plaintiff's damages, but for no other purpose. The judgment must be reversed.

CHRISTIANCY and CAMPBELL JJ. concurred. MARTIN CH. J. was absent.