## Frederick Huson v. John P. Dale.

*Slander : Evidence under the general issue to mitigate damages.* To rebut malice and thus to mitigate damages, but not to establish a defense, it is competent to show under the general issue that at the time the slanderous words were uttered, the defendant reasonably believed them to be true.

Facts which may tend to establish the truth of the words are not for that reason inadmissible under the general issue. If they tend to rebut malice and are offered for that purpose only, and are not such as might have have been pleaded as justification, they are admissible.

*Thompson v. Bowers* ( *1 Doug. 321.*) so far as it is in conflict with these principles overruled.—*Farr v. Rasco, 9 Mich. 353,* approved

Evidence offered in mitigation under the general issue must be treated as involving a conclusive admission that the words are not in fact true ; but the defendant may show that he believed them to be true and may introduce facts to show the grounds of such belief at the time of speaking the words.

The rule in *Underwood v. Park,* ( *2 Strange 1,200* ), that if a defendant intend to rely upon the truth of the charge in any way, he must plead it,—discussed and approved. This rule is not inconsistent with the admission of testimony under the general issue offered in mitigation and not in justification.

*Variance.* Testimony offered by a defendant in mitigation of damages in slander to prove that he believed the words charged—" He stole my horse "—to be true, is admissible notwithstanding the proof showed that the horse referred to belonged to the defendant's wife.

*Heard May 6. Decided July 12.*

Error to Washtenaw Circuit.

This was a action of slander brought by John P. Dale against Frederick Huson, in the Circuit Court for the County of Washtenaw. To the declaration, the defendant pleaded the general issue only ; and on the trial offered evidence to rebut the presumption of malice and in mitigation of damages. The evidence was excluded, and after verdict and judgment for the plaintiff, the defendant brought the case into this court by writ of error.

*H. J. Beakes,* for Plaintiff in error.

The general question which arises on the record in this case, is whether in an action of slander it is competent for the defendant to show under the general issue in mitigation of damages, that at the time of making the charge imputed to him, he had reason to believe, and did believe, the plain-

tiff to be guilty of the offense charged, and that the defendant acted honestly and in good faith in making the charge for which the action is brought. The right to use the rejected evidence as a full justification, was expressly disclaimed at the trial, as the record shows.

1.   It is well settled that malice is the gist of the action.— *Bush v. Prosser, 11 N. Y. 358; Maitland v. Goldney, 2 East 436; 1 Starkie on Slander, 431–433; White v. Nichols, 3 Howard U. S. Rep. 266; 1 Kent's Com. 635, 641, tenth edition, (being pp. 20 and 25 of former edition;) Lewis v. Chapman, 16 N. Y. 372; McKee v. Ingalls, 4 Scam. 30; Taylor v. Kneeland, 1 Doug. 74; Brown v. Brooks, 3 Ind. 518; Gates v. Meredith, 7 Ind. 440; Cook v. Barklay, 1 Penn., N. J. Rep, 180, 183; 2 Bouvier's Law Dict. 529, Slander; King v. Root, 7 Cowen 625.*

2.   And that affirmative evidence may be given by the plaintiff to show actual malice on the part of the defendant, for the purpose of enhancing the damages.— *Taylor v. Kneeland, 1 Doug. 75; 2 Greenleaf's Ev. §418; Defries v. Davis, 7 Car. & Payne, 112; Bromage v. Prosser, 4 Barn. & Cress. 247; King v. Root, 4 Wend. 139.*

3.   In actions of this character, exemplary or vindictive damages are allowed where the defendant has acted in bad faith. And malice is presumed from the speaking of slanderous words, unless explained or excused by the circumstances.—*Sedgwick on Damages, Chap. 18, pp. 522, 526 528, 531, 532, (4th Edition,) and cases there cited; Tillotson v. Cheetham, 3 Johnson, 56, 58, 63, 64, 66; 1 Starkie on Slander, 213; Gilreath v. Allen, 10 Iredell 67; Kinney v. Hosea, 3 Harrington 397; Fry v. Bennett, 4 Duer, 247; Cramer v. Noonan, 4 Wis. 231; King v. Root, 4 Wend. 139.*

4.   The general rule in actions of tort—especially in actions for injuries to the character or person—is that the degree of malice on the part of the defendant materially

affects the damages recoverable. *Taylor v. Church, 8 N. Y. 460, 462, 463, and cases there cited, 1 Kent Com. 641.*

5. It has always been held in cases where special damage is the sole cause of action, that evidence of the truth of the words may be admitted under the general issue to disprove malice.—*Watson v. Reynolds, 1 Moody and Malkin 1; Harrison's Digest 935—Defamation—Evidence; 2 Greenleaf's Ev., § 421.*

But whether the malice be inferred from the words themselves or be shown by affirmative or extrinsic evidence, is of no moment. It is only a different mode of proving the same fact. And on principle the defendant ought to have the same right to rebut the malice in the one case as in the other—at least so far as affects the damages. *See Lewis v. Chapman, 16 N. Y. 372.*

See also discussions of the distinctions between express and implied malice, by N. Hill, Jr., *arguendo* in *Darry v. People, 16 N. Y. 123.*

6. It is agreed on all hands that the defendant may give in evidence under the general issue, in mitigation of damages, any facts which disprove malice, provided they do not prove or tend to prove the truth of the charge.—*Gilman v. Lowell, 8 Wend. 573; Sedgwick on Damages, 633; King v. Root, 7 Cowen 633, 636; Larned v. Buffington, 3 Mass. 546, 553.*

7. In the action for malicious prosecution it is settled that the advice of counsel, on a fair statement of the facts, may be shown to rebut malice under the general issue. —*2 Greenleaf's Evidence, § 459.*

Why should not the same evidence be admitted for the same purpose in slander?

8. Being a mere question of damages, and not matter which could be the subject of a special plea in bar under the common law practice, the evidence was admissible under the general issue without notice.—*Delevan v. Bates, 1 Mich. 97, 99.*

The general doctrine is, that notice is not essential, ( except where specially required by statute,) of matters not the subject of a special plea in bar, under the former practice.—*Thompson v. Bowers, 1 Douglass, 324; Starkie on Slander, pp. 47, 48 of Wendell's Introduction; Buller's N. P. 298.*

9. The decisions against the admissibility of the truth in mitigation, under the general issue, are founded on *Underwood v. Parks,* (*Strange 1,200,*) which was a confessed innovation on the Common Law rule.—*1 Starkie on Slander, 466, 467; Buller's Nisi Prius, 9; Smithies v. Harrison, 1 Lord Raym, 727; Wendell's Introduction to Starkie on Slander, 43, 44, 45, 46; Bush v. Prosser, 11 N. Y. 362,*

10. It submitted that if under the general issue it was competent *for the plaintiff* to show the speaking of slanderous words other than those alleged in the declaration, to show malice on the part of the defendant, and thereby to enhance the damages, as was held in *Thompson v. Bowers, 1 Douglas 321,* any circumstances showing good faith and want of malice must also be admissible *for the defendant,* under that plea. If not, then the issue is not mutual.

Some of the New York cases which refused the defendant the right to show a want of malice, did so for the reason that he had by his pleadings attempted to justify, which, under the rule they had adopted, was conclusive evidence of malice and estopped the defendant from denying it. And it was intimated that a different rule might apply where the general issue only was pleaded. *See King v. Root, 7 Cowen 629, 630, 631, 632, 633.*

11. The rule established in *Farr v. Rasco, 9 Michigan 353,* logically requires that no evidence tending to show the *quo animo* of the defendant should be excluded from the consideration of the jury in assessing damages.

The English cases which allow the circumstances of sus-

HUSON *v.* DALE.

picion, introduced under a plea of justification, to be considered by the jury in mitigation of damages, though the justification fails, must go on the ground that the evidence should be admissible under the general issue, if they rest on principle. Otherwise, if the testimony failed to prove what it was solely introduced for, it should have been excluded altogether. *See Leicester v. Walter, 2 Campb. 251; East v. Chapman, 1 Moody & Malkin, 46: Chalmers v. Shackell, 6 Carr. & Payne, 475; Charlton v. Walton, 6 Carr. & Payne, 385.*

It is no objection to the admissibility of testimony which is good for one purpose, that it is not good for another purpose.

See as to admissibility of testimony in mitigation of damages in slander : *Kennedy v. Gregory, 1 Binney, 85; Morris v. Duane, 1 Binney, 90; Runkle v. Meyer, 3 Yeates, 518; Reynolds v. Tucker, 6 Ohio N. S. 516; 5 Ohio N. S. 293; Stanley v. Webb, 21 Barb. 148; Weaver v. Hendrick, 30 Missouri, 502.*

Ought a plaintiff, morally but not technically guilty of the offense imputed to him, to receive the same damages as a blameless man ?

Ought a man who has, in good faith and without actual wrong intent, charged an offense of which he believed and had reason to believe the plaintiff to be guilty, to be mulcted in the same damages as the man who maliciously fabricates a false charge with full knowledge of its falsity ?

Is it any reason for depriving the defendant of the benefit of showing the suspicious circumstances which induced him to *believe* the defendant guilty, that the defendant *was in fact guilty* ?

If so, a guilty plaintiff stands a better chance for damages under the general issue than an innocent plaintiff mistakenly accused.

Is a defendant to be denied the right of vindicating his motives and reducing the damages under the general issue, because under a notice of justification he might have made a full defense?

If *Thompson vs. Bowers* shall be construed to require an affirmative answer to these questions, then I submit that its doctrine is overruled by the later case of *Farr v. Rasco;* that it is contrary to justice and all the analogies of the law, and inconsistent with itself; that it is not like the case where a false doctrine has become a rule of property, and is therefore to be maintained; but that the original and true Common Law should be restored, and declared that any fact, whether true or only apparently true, on which the defendant acted, which tends to show his malice or his good faith, should go to the jury under the general issue on the question of damages.

*A. Felch,* for Defendant in error.

I. The first offer was of the records and files in a cause then pending in said Court of a suit in Replevin for a horse, brought by Byron Green and said Dale against said Huson, with an offer to show, in connection therewith that Dale directed the Sheriff not to take the horse on the writ until Saturday night, so that they could get possession of the horse and run him out of the County, and that the horse was so taken and run out of the County, which led the defendant to believe that the process was used as a matter of form to obtain possession of the horse, and not on the ground that they claimed the horse as their property, and all the facts and circumstances connected therewith.

This was in effect an offer to prove that Green and Dale stole the plaintiff's horse, corruptly making use of a writ of replevin to get possession of the property, and running it off under circumstances to constitute the crime of larceny.

1. Under the general issue, evidence of the truth, of

the slanderous words, can not be given in evidence to rebut malice or in mitigation of damages. *Thompson v. Bowers, 1 Doug. 321;* This has been the recognized doctrine in this State for more than twenty-five years, and it is presumed will still continue to be the established rule of law.

It is the universal rule, where not affected by statutory provisions, that the truth of the slanderous words can not be given in evidence under the general issue only, even in mitigation of damages. *1 Am. Lead. Cases, 187; Townshend on Slander, 255, and the numerous cases cited in note 1,031.*

In a few of the States it has been said by the Courts that circumstances which disprove malice but do not tend to prove the truth of the charge contained in the words spoken are admissible in evidence under the general issue; but these are mere *dicta* and no such general rule prevails. *1 Am. L. Cases, 187, 188, 190.*

And in all cases where evidence going to mitigate damages only, is admitted, it must be such as fully admits the charge to be false; which is not the fact in this case. *Cooper v. Barber, 24 Wend. 105.*

The rule that all such testimony is excluded under the general issue, *if it tends* to prove the truth and to criminate the plaintiff, or which forms a link in a chain of evidence to prove a justification, is not only the law of Michigan, but the general law of the land. Ib. 187.

2. This offer of testimony was subject to the further objection that it did not state specially all the facts which were offered to be shown.

II. The defendant below offered in evidence the return of a Justice of the Peace to the Circuit Court of a complaint made to him by Henrietta C. Huson, against said John Dale and others, for the larceny of a horse described therein, and alleged to be of the goods, chattels and property of said Henrietta C. Huson, with the warrant issued thereon, and showing that said Dale had been arrested thereon on said

charge, and that he was discharged on the examination before the Justice on the testimony on behalf of the People. This testimony was inadmissible because:

1. It was proposed to show that Dale had been prosecuted on a charge of stealing the horse of Henrietta C. Huson.

If this be admissible, a party may wantonly charge any crime in the catalogue of offenses, and shield himself from merited punishment by showing a complaint for another and entirely distinct offense, founded or unfounded, made by any other person against the victim of his slanders. The same rule must apply here as in plea of justification. A charge of committing one offense is not justified, nor the damages diminished by showing the commission of another, although of the same or greater enormity.—*Stow v. Converse, 4 Conn. 7; Andrews v. Van Duzer, 11 John, 38; Whittaker v. Carter, 4 Ind. 461; Swan v. Rary, 3 Black. 298; Self v. Gardner, 15 Mis. 480; Townshend on Slander, 259 et seq.*

2. If the provocation offered to be proved had been on a charge of stealing the horse of the Plaintiff in error, whether commenced on his complaint or that of a stranger, it would be equally inadmissible.

3. But these proceedings, which were offered to rebut malice on the part of Huson, show that Dale was discharged on his examination on the sole testimony offered by the People.

III. The third offer was of evidence sought to be brought out by a question to the plaintiff in error, while a witness in his own behalf, after stating that before the speaking of the words there were reports in circulation in reference to the larceny of a horse by Green and Dale, and what several persons said about it, and that he had taken advice of counsel, Messrs. Beakes & Hawkins, as to what the offense was, he is asked to "state what advice, if any, they gave you?"

It is well settled that testimony that the defendant had

been told by any third person, even by one who personally knew the fact, that the defendant was guilty of the offense charged, could not be received under the general issue.— *Thompson v. Bowers, 1 Doug. 321.*

Much less could the defendant's talk with a third person who knew none of the facts, and simply expressed an opinion, based on the story told by the defendant to him. Such evidence had not the dignity of even respectable hearsay testimony.

IV. The fourth proposition was to show that "he correctly stated the facts of the case to the counsel  *  *  * and the advice given by the counsel as to whether it would constitute larceny."

This is also subject to the objections,

That it related to the larceny of a horse which was the property of Mrs. Huson and not of the defendant.

It stated no facts that it was proposed to prove. It did not state even what opinion was given by the counsel upon the statement which was made, and to the other objections above stated.

V. The fifth proposition was to prove "what facts he stated to said counsel, and that he was advised by said counsel that such state of facts would constitute larceny."

The testimony thus offered was of the same general character as the preceding, and liable to the same objections.

VI. The testimony indicated in the last three propositions—that relating to conversations with the defendant's own counsel — was in fact nothing but hearsay, a conversation in which all statement of facts was made by the party himself, and the opinion expressed was of a stranger to them, based solely on the narration of the defendant below. If testimony can thus be made, to shield a slanderer from punishment, he can always easily protect himself. He has only to fabricate his facts and to take the ready opinion of some irresponsible lawyer and his tongue-license is perfect.

19 MICH.—D.

VII. It may be claimed that the evidence offered and rejected in this case was offered merely for the purpose of showing that the defendant had reasonable ground for believing that the charge he made was true.

The weight of authority seems to be that testimony of this kind is not admissible for any purpose.—*1 Am. Lead. Cases 188 ; Purple v. Horton, 13 Wend. 10 ; Cooper v. Barber, 24 Wend. 105 ; Wagstaff v. Ashton, 1 Harrington 503 ; Petrie v. Rose, 5 Watts & S. 364 ; Kay v. Ferdigal, 3 Barr 221 ; Updegrove v. Zimmerman, 1 Harris 619 ; Boarland v. Eidson, 3 Grat. 45 ; McAlexander v. Harris, 6 Mumford 16.*

But whether this rule of exclusion be universal or not, it seems clear that it cannot be admitted except for the purpose of repelling the presumption of actual malice, where special damages, upon proof of an aggravated malice, are claimed by the plaintiff.—*McGee v. Sodusky, 5 J. J. Marshall 185 ; Hart v. Reed, B. Monroe 166 ; King v. Root, 4 Wend. 114 ; Usher v. Severance, 20 Maine 9.*

In this case no proof was offered of special malice or claim made for special damages. The malice implied by the law cannot be rebutted nor the damages given by the law be diminished by any such evidence.

VIII. But, if the Court erred in rejecting the offered proof, it is manifest from the record, that the plaintiff in error suffered no injury from it, and so the judgment should not be reversed.

CHRISTIANCY, J.

This was and action of slander brought by Dale against Huson in the Circuit Court for Washtenaw County.

The slanderous words alleged in the declaration were that defendant below had said of the plaintiff, "he stole my horse," also the following: "By. Green and John Dale,"

(meaning one Byron Green and the plaintiff), "stole my horse."

The defendant pleaded the general issue only, without notice of special matter. The speaking of the words, of and concerning the plaintiff, was proved; and the plaintiff rested.

The defendant, Huson, then offered in evidence under the general issue to rebut malice, and in mitigation of damages, and for no other purpose, among other things:

1st. The record and files in a case then pending in the same Court in a cause wherein Byron Green and said Dale were plaintiffs, and defendant Huson was defendant, brought in replevin to get possession of the horse (charged by the defendant Huson to have been stolen), and to show in connection therewith that said Dale directed the Deputy Sheriff who had the writ of replevin for service, not to serve the same, nor take the horse, until Saturday night, so that they, Green and Dale, could get possession of the horse and run him out of the county; and that the horse was so taken and run out of the county, which led the defendant, Huson, to believe that the process was used as a matter of form to obtain possession of the horse, and not on the ground that they claimed the horse as their property; and further to show all the facts and circumstances connected therewith merely to rebut any presumption of malice in speaking the words, and for no other purpose.

2d. The defendant having, in his own behalf, testified that there were reports in the neighborhood before the speaking of the words, of their having stolen the horse, that certain persons had told him they had stolen the horse and ran him off to Toledo, that several had told him he ought to take them up for stealing the horse; and that on Saturday before the words were spoken, he took advice of counsel, Messrs Beakes and Hawkins (who are attorneys of this Court), as to what the offense was, and in substance (for such was the effect of the several offers upon

this point), to show that he correctly stated the facts to his said counsel, and what those facts were; and that he was advised by his said counsel that such state of facts would constitute larceny.

These offers with others were rejected, the testimony excluded, and the defendant excepted.

The rejection of this evidence is sought to be justified on the ground that its tendency would have been to establish the truth of the charge imputed by the slanderous words; and that the defendant, having pleaded the general issue only without notice of justification, was not at liberty to introduce such evidence even for the purpose of rebutting malice and mitigating the damages.

No question in modern times has, perhaps, given rise to a greater amount of judicial controversy. The conflict in the decisions upon it is absolutely appalling. And the attempt to trace the line of mere authority through the maze of hostile decisions, would be calculated only to confuse and lead the mind astray from the real principles of justice involved in it, and could serve no useful end. A careful review of the decisions would require volumes and I shall not attempt it.

At the common law, prior to the decision in the case of *Underwood v. Parks,—2 Strange, 1,200*—the question here presented would have been easy of solution. Because 1st—by the well settled principles of pleading (which that case did not undertake in this respect to change) no facts falling short of a complete defense could be set up by way of special plea to the action, and a mere partial defense, or facts going only in mitigation of damages, might always be shown under the general issue. And 2d—the defendant in an action of slander was at liberty to prove the truth of the charge itself, under the general issue to rebut malice and mitigate the damages, though this would have constituted a full defense, had it been pleaded in justification.

HUSON v. DALE.

But in *Underwood v. Parks*, the defendant, under the plea of not guilty, offering to prove the truth of the words in mitigation, the Chief Justice refused it; saying. "At a meeting of all the Judges, upon a case that arose in the Common Pleas, a large majority of them had determined not to allow it, *for the future*, but it should be pleaded, whereby the plaintiff might be prepared to defend himself, as well as to prove the speaking of the words."

It is clear from the terms in which it was announced that this was a new rule of pleading then for the first time introduced for the purpose of preventing surprise upon the plaintiff. And if the rule had subsequently been confined to cases like that in which it was announced, when the offer was to prove the truth of the words, which if pleaded would have constituted a full justification—the operation of the rule might have been rendered beneficent, and much of the conflict which has since arisen from it might have been avoided. But cases have been and will continue to be of frequent occurrence, in which the defendant, though he may have believed and had reason to believe the truth of the charge when uttered, cannot, and does not upon the trial, seek to establish the truth of the charge and is even willing to admit its falsehood, but wishes to show, in excuse, that at the time he uttered it, he had reason to believe its truth and was not therefore actuated by that malice or degree of malice which might otherwise be inferred from the making of the false charge or from other evidence of malice introduced by the plaintiff. And, to apply the rule in question to this class of cases, must always produce the most glaring injustice to the defendant, depriving him of the benefit of all such mitigating circumstances, and compelling him to respond in damages to the same extent as if he had been actuated by the most vindictive malice.

The English Courts, and most of those in this country,

have admitted the authority of the rule laid down in this case, and professed to follow it, though with the greatest possible diversity in its interpretation, and the extent of its application. The defendant, of course, has not been allowed to plead these mitigating circumstances, because they do not constitute a justification or complete defense. And in some of the English, and many of the American cases, when he has undertaken to introduce them under the general issue in mitigation, he has been told that they are inadmissible under the rule in *Underwood v. Parks,* because he has not insisted upon the truth of the words by a plea or notice of justification. If, on the other hand, he has put in such a plea or notice, and failed to sustain it by the proof; then, under another rule of a most arbitrary and anomalous character ( which has fortunately been abolished in this State and many of the other states by statute), his plea or notice was held to be a repetition of the slander in the most solemn form, conclusive evidence of malice and an aggravation of the damages.

It is universally conceded that some degree of malice in the defendant is essential to the maintenance of the action. This malice is sometimes said to be either express or implied ; but in both cases it is actual malice, or malice in fact, the difference being only in the mode of proof; and in both cases the burden of making this proof rests upon the plaintiff. What is called express malice is shown by some affirmative proof beyond that of the false and slanderous words; while implied malice is that which is naturally inferred as a presumption of fact from the proof of the publication of the false and injurious charge, on the familiar principle that a man is presumed to intend the natural and ordinary consequences of his own voluntary acts, and that he would not therefore make a false charge injurious to another without intending to injure him, unless under circumstances which indicate an innocent intention. But in both cases alike it is actual malice which the law con-

templates. Such being the principle, it follows as a necessary result, and is very generally admitted by the authorities (however differing in other respects), that the amount of damages to be recovered should, to some extent, be governed or graduated by the degree of malice by which the defendant was actuated. And, accordingly upon this principle, (for it can be upon no other), most, if not all, the cases which profess to follow the authority of *Underwood v. Parks,* though differing in many other respects, *toto cœlo,* yet entirely concur in this, that the plaintiff may, for the purpose of enhancing or aggravating the damages, give other and affirmative proof of actual malice beyond that which is to be inferred from the false charge; such as the repetition of the same charge on other occasions, or other facts tending to show a vindictive motive; and some cases have gone so far as to admit evidence of other and independent slanderous charges for this purpose. And yet the Courts in several of the States, professing to follow the rule in *Underwood v. Parks,* have often in the same case in which they have allowed the plaintiff to give such evidence to enhance the damages, practically held the defendant precluded from giving any evidence tending to rebut malice and to mitigate the damages. On principle, independent of artificial rules and in Courts which recognize justice as one of the ends to be attained by a judicial trial, it would certainly seem that these must be reciprocal rights on the part of the plaintiff and the defendant, and that the plaintiff could not be allowed to give such additional proof of actual malice to enhance the damages without, at the same time and upon the same principle, allowing the defendant to show any facts to rebut the malice and to mitigate the damages. Because the rule in *Underwood v. Parks* did not allow the defendant to prove and rely upon the truth of charge even in mitigation, without pleading it in justification, it was supposed to follow, as an inevitable logical consequence, that he could not be allowed to show

any facts *which might tend* to establish the truth of the charge. This was the rule actually adopted in some of the States, and which in some of them would seem to be still recognized. And, as any evidence the defendant might offer to show that the charge was made under circumstances which might have induced him to believe it true when made, would naturally, and in most cases, perhaps, necessarily tend to prove the truth of the charge, the defendant was thus absolutely precluded from making *any* defense, even by way of mitigating the damages, merely because he could not make a *full defense* to the *whole cause of Action* : while the plaintiff was at liberty, in the same case, to introduce affirmative evidence beyond that to be inferred from the false charge itself, to show a higher degree of malice for the purpose of enhancing the damages; such was the case of *Thompson v. Bowers* in this State, (*1 Douglass 321*) relied upon by the defendant in error. And this was in accordance with the settled rule of decision in several of the States, but certainly not in accordance with the principles of the common law. It was adopting one measure of right for the plaintiff, and another and a very different one for the defendant, or rather, denying his right altogether, by allowing the plaintiff to prove what the defendant was denied the right of controverting.

This was claimed to be the inevitable result of the severest logical deduction from the rule in *Underwood v. Parks.* And defendants must have been inclined to admit its severity, though they may have failed to discover a flaw in that logic which rendered it, to them, inevitable. Inexorable logic was vindicated, if not propitiated, by the sacrifice of of defendants' rights.

Legal logic should be constructed upon principles at least akin to justice, the attainment of which should be its end and object: and by its tendency to this end its soundness should be tested. As the surveyor tests the correct-

ness of the line in his front, by taking a back sight along the line he has run, the legal logician may often profit by pausing to test his logic by its results. Accidental evils, it is true, will sometimes result from the soundest rules devised by human wisdom, when applied to the peculiar facts of particular cases. But when the natural and ordinary tendency of a rule is *generally* and *systematically* to produce injustice, without any compensating benefit, the logic upon which it is supported may safely be suspected of a lurking fallacy somewhere.

Recoiling from the gross injustice of the rule when carried to the extent of excluding all evidence in mitigation which might tend to prove the truth of the charge, the English Courts (especially in the later cases) and those of some of our sister States have held that facts and circumstances, though tending to prove the truth of the charge, may be received in mitigation, provided they fall short of establishing its truth. This, though better calculated for the purposes of justice, has not been placed upon a very clear or well defined ground. It necessarily leaves it for the Court to pass upon the weight of the evidence in deciding upon its admissibility. If all the hardships and injustice, which have thus arisen from the attempts to apply the rule in *Underwood v. Parks* to other cases, were the necessary result of the rule there adopted, I should without hesitation, concur with Selden J. in *Bush v. Prosser 11 N. Y., 357,* etc., that the case should be entirely repudiated, as clearly in conflict with the principles of the common law, and subversive of justice. But the present case does not require us to go so far. And, in my view, the rule actually adopted and intended to be adopted in that case is not justly chargeable with all the injustice which has resulted from the attempts to apply it in other cases, but most of the evil consequences have resulted, not from the case itself, but from an unwarrantable extension and

19 mich.—E.

misapplication of the rule to cases not coming within its principle.

In that case the defendant's offer was to prove under the plea of not guilty, in mitigation of damages, *the truth of the words* charged as slanderous. This, if pleaded would of itself have constituted a full justification or complete defense, when sustained by the proof. Such proof,—that is, proof of a fact which, if pleaded, would constitute a full justification and bar to the action, it was held should not for the future be given even in mitigation, unless pleaded. And if the defendant believed himself prepared to prove the truth of the charge, there would seem to be no injustice in requiring him to plead it, so that the plaintiff might come prepared to meet it. The only hardship which could result to the defendant from this course, was one which did not arise so much from this rule itself, as from that anomalous rule which, in case of a failure to establish the plea to the satisfaction of the jury, made it conclusive evidence of malice, and aggravated the damages. To give the truth the *effect* of a full justification or bar to the action it was always necessary to plead it, though up to the time of this case, it had been admissible in mitigation under the general issue. This was the full extent of the change introduced by the new rule. It did not purport to extend to a case where the fact offered to be proved did not, *ipso facto*, constitute a full justification, if pleaded; but only to such as might have been pleaded in justification. The Court were not guilty of the absurdity of requiring a defendant to plead mere matters of mitigation, not amounting to a full defense, and which could not therefore, on principles of law, be pleaded. Facts which might merely tend to prove the truth of the charge, or mere matter of evidence, could not be pleaded in justification, but the fact itself, the truth of the charge must be directly and positively alleged. And this was *the*

*fact* offered to be proved in that case. The rule adopted merely said to defendants, "if you are prepared to prove the truth of the words, which, if pleaded would consti-tute a justification—you must take the risk of pleading it, so that the plaintiff may not be taken by surprise on the trial." It is doubtless true that, within the spirit of the rule intended to be established by the case, the defendant would not be at liberty to introduce evidence tending to prove the truth of the charge *for the purpose of establishing its truth.*

But I am utterly unable to discover any thing in the case, which would require the rejection of any evidence ten-ding to show that defendant believed the truth of the charge when uttered, for the purpose of disproving malice and miti-gating the damages; especially if offered in a manner and under circumstances, amounting to a clear disclaimer of the right to insist upon the truth of the charge, or an admis-sion that it was false in fact, though when made believed to be true.

The legal effect, as it seems to me, of the rule actually laid down by the Court was substantially this; that under the general issue, without a plea of justification, the defend-ant should not be at liberty to insist upon the truth of the slanderous words; but the words being proved, the de-fendant, by omitting to plead the truth in justification, was to be considered as, in legal effect, admitting their falsehood. And in this view of the case, the very offer of such evidence as last supposed, though its tendency might otherwise be to prove the truth of the charge, would (un-der the operation of this rule) when considered in connection with the neglect to plead in justification, constitute a clear and conclusive admission, that the charge was false in fact though at the time he made it he may have believed it to be true. But more especially, as it seems to me, would this be the case when the offer, in its very terms, shows that it is to be introduced only for the purpose of rebut-

ting malice and mitigating the damages. Had this, which seems to me to have been the substantial legal effect of the rule in that case, been generally accepted as its true exposition, volumes of conflicting decisions and judicial controversy, might have been avoided. But complete justice could not always be done to the defendant under the rule so long as Courts should adhere to the arbitrary rule that a plea or notice of justification not sustained by the proof, was conclusive evidence of malice in aggravation of damages. But where this last rule has been abandoned, or as in this State and many others, abolished by statute, I can see no hardship to the defendant, nor any difficulty in the way of a fair trial likely to result from the rule in *Underwood v. Parks*, as I have endeavored to explain it. And the rule in that case, so far as it requires the defendant, if he intend to rely upon the truth of the charge in any way, to plead it, has been so long and so generally adopted and the corresponding practice so thoroughly settled, that I see no satisfactory reason for disturbing the rule thus limited.

The evidence offered by the defendant in the present case on the two points already stated was expressly offered for the purpose of rebutting malice and to mitigate the damages, and for no other purpose. This offer, under the pleadings and in the manner thus made, must be treated as involving a disclaimer of the truth of the words, and a conclusive admission that they were not in fact true; but this in no way precludes the idea that the defendant, at the time, may have believed them to be true. And he had the right to introduce any facts and circumstances tending to show grounds for such belief at the time of the speaking of the words. This could not prejudice the plaintiff when accompanied with the admission that the charge was, nevertheless, untrue in fact. The evidence offered would, we think, have had a clear tendency to show such grounds of belief on the part of the defendant, and thereby tended to weaken or rebut the inference of malice otherwise to be

drawn from the utterance of the false charge, and thus properly to lessen the amount of damages to be recovered.

This principle was fully admitted and applied by this Court in *Farr v. Rasco, 9 Mich. 353,* which, in its reasoning ( with which we are entirely satisfied ), must be regarded as having thus far shaken the authority of *Thompson v. Bowers.*

But it is further objected that this evidence was inadmissible on another ground; that the defendant admits that the property of the horse referred to in making the slanderous charge, was vested in the wife of the defendant and not in himself, and that the evidence offered would not have tended to show that defendant believed the plaintiff had stolen his horse as declared by the slanderous charge.

We regard the objection under the circumstances of this case, as more technical than sound or just. It might, perhaps, have had more weight if the defendant had attempted to justify. But there does not appear to have been any dispute that this was the same horse intended to be referred to by the defendant in making the charge; and it would be for the jury to find from the evidence whether this was so. The evidence of the replevin suit offered by the defendant would have shown that the horse must have been in the defendant's possession when replevied by the plaintiff and Green, and would therefore naturally be spoken of by the defendant, under such circumstances, as his horse.

Indeed, it would be very natural for any man who had merely borrowed or hired a horse for the time being and from whom he should be taken, under circumstances which induced the belief that he was stolen, to say of the person who had taken the horse away: "he has stolen my horse" quite as natural as to say under the same circumstances: "he has stolen the horse of A. B." (the owner). And the malice of the charge, though it should prove to

be false in fact, would not be likely to be the greater or less on account of the technical point of the actual right of property. And the relation of husband and wife and the almost universal custom of using such property in common, either husband or wife speaking of it as his or her property, is not to be overlooked, and would be very proper for the consideration of a jury.

We think the evidence was erroneously rejected. The offer of the defendant to introduce the record of a criminal complaint made against the plaintiff and others by the wife of the defendant, for stealing the horse (which was described in the complaint as her property) and the proceedings under the same, showing that the plaintiff, with the other parties charged with the offense, was discharged on the evidence given on the part of the People before the Justice, was, I think, properly rejected. Had the complaint been made by and on the oath of the defendant himself, instead of his wife, it is possible it might have had some tendency to show a belief on his part, at the time that the charge was true. Upon this however we express no opinion. But not being made or sworn to by him, and the plaintiff having been discharged on the evidence given for the People, I can see no intelligible ground, on which the evidence, if given, could have had any legitimate tendency to rebut malice or to mitigate damages.

The judgment of the Circuit Court should be reversed with costs, and a new trial awarded.

The other Justices concurred.