WOLFF v. SMITH.

| | |
|---|---|
| 112 | 359 |
| f121 | 531 |
| f121 | 539 |
| 112 | 359' |
| 124 | 362 |

1. SLANDER—EVIDENCE—DAMAGES.
   The testimony of third persons, offered in mitigation of damages in an action for slander, that they had heard a damaging report concerning plaintiff some years before, upon a repetition of which the action is based, is incompetent, where it appears that defendant's information was acquired from an entirely different source.

2. SAME—PRIVILEGE.
   Privilege does not constitute a defense to an action for the reiteration of an alleged slander after the occasion for the privilege has ceased.

Error to Muskegon; Russell, J. Submitted November 19, 1896. Decided April 27, 1897.

Case by Henry A. Wolff against William H. Smith for slander. From a judgment for defendant, plaintiff brings error. Reversed.

*Nelson De Long*, for appellant.

*Chamberlain & Cross*, for appellee.

HOOKER, J. This is an action of slander, based on language used by the defendant which is said to have amounted to a statement that the plaintiff was a criminal. The plaintiff was a candidate for the office of treasurer of the city of Muskegon, and among the causes of action alleged is a conversation which occurred after his defeat. The alleged slander consisted in statements that the defendant had been informed that the plaintiff was a safe-cracker, and had served time in a penitentiary for safe-blowing. The defendant's counsel was allowed to show by Mr. Niskern that about three years before the alleged slander he heard one Bassett make a statement at one time that the plaintiff had served a term in the state's prison. One Morris testified that two or three years before he heard that the plaintiff had been a safe-cracker. There was but one excuse for offering this testimony, inasmuch as it did not go to general reputation (see Newell, Defam. 890), and that was in mitigation of damages, and it was admissible, if at all, upon the theory that it was known and believed by the defendant, and "for the purpose of showing the *quo animo* of the defendant." *Farr* v. *Rasco*, 9 Mich. 356; *Huson* v. *Dale*, 19 Mich. 34; *Welch* v. *Ware*, 32 Mich. 86; *Proctor* v. *Houghtaling*, 37 Mich. 41; *Maclean* v. *Scripps*, 52 Mich. 244. In this case, not only was there no evidence to show that this statement of Bassett, or that made to Morris, was communicated to the defendant, but it appears that what he knew came from other sources. Hence it seems clear that this testimony was not properly admitted.

The judgment is reversed, and a new trial ordered.

LONG, C. J., and MONTGOMERY, J., concurred with HOOKER, J.

GRANT, J. (*dissenting*).   This is an action of slander, in which the verdict was for the defendant.   The slanderous words complained of are stated in four counts. The first count charges the defendant with saying to, and in the presence and hearing of, one James C. McLaughlin:

"I don't see how Collins can support Wolff [meaning the said plaintiff for the nomination for the office of city treasurer of the city of Muskegon in the then approaching city convention of the city of Muskegon].   Did Pete Nelson tell you what Collins told me?   Collins told me to watch him [meaning the said Wolff], for he was a safe-blower, and had done time for it; and now he is supporting him for treasurer."

The second count charges defendant with saying to one Schnorbach:

"Hawley and Collins told me when I first came into office under Hancock that Wolff was a professional safe-blower."

The third count charges defendant with saying to one Rodgers:

"I don't see how you folks can support Wolff.   He is a safe-cracker, and has served time in the penitentiary. I learned it right after I came into office; right after Hancock's death.   Go and ask Collins if that isn't right."

The fourth count charges that defendant said to one Clink and one Wilson:

"I heard that Wolff was a safe-cracker, and that he had done time for it.   I heard that he was a safe-blower, and an accomplished burglar.   Shortly after I came here, Hawley and Collins told me to keep an eye on Henry Wolff; that he was an accomplished safe-blower; that he was a safe-cracker.   And they took me down in front of his store, and showed me Wolff as the man."

The defendant, at the time of the alleged utterances, was under sheriff and acting sheriff of the county of Muskegon.   Collins and Hawley were deputy sheriffs.

Plaintiff was a candidate for the nomination of city treasurer on the Republican ticket. Plaintiff, defendant, and the other parties named were also Republicans. The alleged utterances in the first three counts were made shortly before the caucuses to choose delegates to the city convention. Each count closes with the allegation that the defendant, by the aforesaid utterances, charged him with the commission of crime, and with having been convicted and sentenced to prison therefor. Plaintiff secured the nomination, but was defeated at the polls. No damage was claimed by reason of his defeat. Defendant opposed the nomination of plaintiff. The witnesses McLaughlin, Schnorbach, and Rodgers all testified that they asked defendant why he was opposing plaintiff's nomination, and that he replied that Collins, or Collins and Hawley, had informed him, when he went into office, that plaintiff was a professional safe-blower, that he had done time for it, and to watch him. He referred them to Collins as his authority. Defendant positively denied that he had ever stated that plaintiff was guilty of the crime charged, or that he had been sentenced and imprisoned. His statement of what he said is as follows:

"McLaughlin asked me, I think, in this way,—something like this: 'What is the matter with you? Why are you opposed to Wolff for the nomination for city treasurer?' I replied in this way: I says, 'Is Bill Collins supporting Wolff?' He says, 'Yes.' I says, 'I don't see how he could conscientiously do it, if there is anything in the talk, the story told me, when I first came down here, or shortly after I came down here and went into office,—the sheriff's office.' He asked me what it was, and I told him. I told him that they told me that Wolff had been in the business of safe-cracking, and was a burglar, and had taken me down and pointed him out to me,—down on the street; and I told him, so far as I knew, I knew nothing of the facts of the matter, and in fact didn't know Wolff only by sight; and I told him that I didn't see how Collins could support him, if there was any truth in it. That is all there was of it."

Mr. Collins, a witness for plaintiff, in rebuttal testified

that he had so informed defendant, and told him that plaintiff "had done time for it." Three errors are assigned, one upon the admission of testimony and two upon the charge of the court.

I deem it unnecessary to discuss the error alleged upon the admission of testimony. In my view of the case, the court should have directed a verdict for the defendant. Instead it was left to the jury to determine whether the defendant intended to and did charge plaintiff with a crime, as alleged in the declaration by the innuendoes. The court gave 11 of the 12 requests preferred by the plaintiff, which covered the entire theory of his case. One of these requests reads as follows:

"There is no more privilege attending the repetition of the false charges of crime than if the defendant made a charge upon his own responsibility, and I charge you that there is no proof in this case showing any privilege for the defendant ever to charge the plaintiff with crime, or in stating in the presence and hearing of others that he had been told the plaintiff was guilty of safe-cracking and safe-blowing, or that he is a professional safe-cracker or safe-blower, or that he had served or done time for the same in the penitentiary."

The court also charged that plaintiff had not been guilty of any crime, and that to say of him that he was a professional safe-blower, and had served time in the penitentiary, was a slander; and that, if defendant had heard such report, he had no right to repeat it. The declaration asserted that defendant charged plaintiff with a crime. The court instructed the jury that such a charge was not privileged, yet plaintiff complains because the court refused his twelfth request, viz.:

"To hold that false charges of a defamatory character made against a candidate for an elective office, where he is falsely charged with a crime, are privileged as matters of law if made in good faith, and that the party making them is absolutely shielded against liability, would be a dangerous doctrine, and it is not allowed under the law."

The language of this request was taken from the opinion of this court in *Bronson* v. *Bruce*, 59 Mich. 467. The

request was properly refused. The argument of a court in its opinion is not always proper to be read to the jury. It may be, and often is, proper, where it gives a definition, or lays down a rule of law applicable to the case. The language of this request was wholly inapplicable to any issue presented to the jury, or to any fact to be determined by them.

The court, at the request of the defendant, gave the following instruction:

"That unless the defendant intended in some of the conversations he had with the persons named in the declaration, namely, J. C. McLaughlin, Philip Schnorbach, Lincoln Rodgers, or Steven H. Clink and William Wilson, to charge plaintiff with being a safe-cracker or a safe-blower, or with having done time in the penitentiary, or unless such a charge can be fairly inferred from the language used, and the language used was so understood by the persons to whom they were uttered, then the plaintiff has not maintained his action, and your verdict must be for the defendant."

The giving of this request is alleged as error. The instruction was correct, under the defendant's version of the words uttered by him. He was asked why he was opposing the nomination of plaintiff. In reply he did not charge plaintiff with any crime, but, on being informed that Mr. Collins was supporting plaintiff, he replied that he did not see how Mr. Collins could do so in view of what he had said about him to defendant. This was not necessarily the utterance of a slander, under the doctrine of *Ellis* v. *Whitehead*, 95 Mich. 105. It might with at least equal propriety be found to be a reflection upon Mr. Collins for supporting a man about whom he had made such a statement. It was, under plaintiff's theory, a question for the jury to determine what defendant meant by the words they found he uttered. If they found he did not intend to charge plaintiff with a crime, as alleged in the declaration, but either to charge Collins with inconsistency, or to truthfully and honestly state to those electors his reasons for opposing plaintiff's nomination,

the verdict should have been not guilty. The communication was privileged, and the court, if requested, should have so instructed the jury. *Wieman* v. *Mabee*, 45 Mich. 484; *Bacon* v. *Railroad Co.*, 66 Mich. 166; *Pollasky* v. *Minchener*, 81 Mich. 280; *Edwards* v. *Chandler*, 14 Mich. 471. The subject is fully discussed, and authorities cited, in *Bacon* v. *Railroad Co.* It was not shown that the defendant made the alleged slanderous statements to any but those who asked him why he was opposing the nomination of plaintiff. These persons were electors, and, except Clink, members of the same political party with plaintiff and defendant, and were interested in securing the nomination of a good man. There is nothing in the record to show any malice or ill will on the part of defendant towards plaintiff. Defendant made no direct charge, but in every instance stated what had been told him, and who told it. Every respectable elector is interested in securing the nomination for office of men of good character and reputation. When his reason for opposing a candidate is solicited by another elector, and he in good faith states his reason, and truthfully gives the source of his information, the law protects him from an action of slander. In *Wieman* v. *Mabee, supra*, the defendants had by affidavit directed to the superintendent of schools, in order to prevent his granting a license to Wieman to teach school, charged him with being a man of bad moral character. The court said:

"In the present case the communication was fully privileged. It was made by persons interested in the school to the person qualified to receive and act on the petition, for an honest purpose, and with an honest belief in the justice of their action. In such cases no action can be maintained, even if the complaint is untrue, if not maliciously made."

So in this case there is nothing to show any malice, or that the statement was not made for an honest purpose. Are not reputable electors as much interested in securing a man of good reputation and character for office as were

the citizens defendants in the *Wieman Case* to secure the licensing of a moral man to teach school? If the communication in that case was privileged, for what reason can it be held that this was not? Many authorities might be cited in support of this proposition. They can be found collected in 13 Am. & Eng. Enc. Law, 403; *Ormsby* v. *Douglass*, 37 N. Y. 477; *Marks* v. *Baker*, 28 Minn. 162; *Briggs* v. *Garrett*, 111 Pa. St. 404. In *Briggs* v. *Garrett*, the defendant, president of a committee of 100, had published a letter addressed to him, and reflecting upon the character of the plaintiff, who was a candidate for re-election to the office of associate judge of the court of common pleas. He read the letter to the committee, in the presence of reporters and others. The court assumed that the letter itself was actionable unless excused by circumstances attending its publication, held that the communication was privileged, and sustained the instruction of the court below directing a verdict for the defendant. Many cases are · there cited and commented upon. The court in that case used the following language:

"We have no concern with the knowledge or motive of the writer of the letter. Conceding, for the purpose of this case, that every word contained therein is false, and was known to be so by the writer; that it was sent out of pure malice, to injure and defame Judge Briggs,—no such knowledge was brought home to Mr. Garrett, nor is there anything in the case from which it could be justly imputed to him. So far as he is concerned, it was a mistake; nothing more. The difference between an honest mistake, made in the pursuit of a proper object, and a willful falsehood, coined for the purpose of deception, is so palpable that we may well be excused from dwelling upon it at length. It is mistakes, not lies, that are protected under the doctrine of privilege. A communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made, in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved before there can be a recovery. And whether a

communication be privileged or not is a question for the
court, not the jury."

That case is precisely in point, and its facts are parallel
to those in this case.

It is, however, suggested by my brethren that this rule
does not apply to the fourth count in the declaration,
which refers to statements made by the defendant after the
nomination and the election.  A sufficient reply to this is
that the plaintiff did not request the court to instruct the
jury specifically upon this count.  The language used was
substantially the same in all the conversations.  Plaintiff
contended that they were all libelous.  If the language
used before the nomination was privileged, and that used
after was not, it was his duty to request the court to so
instruct; but, aside from this, the statement made to Mr.
Clink was not, in my opinion, libelous.  This conversa-
tion occurred the day after the election, and Mr. Clink's
testimony was as follows:

" I think I commenced to joke Mr. Smith about elec-
tion in some way ( I don't know just how ), and we talked
a few minutes in that direction, and Billy Wilson made
the remark that a good joke on somebody (and I have
forgotten just who he said) was one that he heard the
other day.  He proceeded to state what he heard.  We,
or one of us, asked him what it was, and he said he had
heard about an old-time Republican down on Pine street
saying that he had voted the Republican ticket for a good
many years, and never had made a scratch,—voted it
straight always; but he guessed that this year he would
have to scratch it some; have to scratch one name any-
way; he couldn't vote for Wolff, because Billy Smith had
told him that Wolff was a very bad man,—a safe-blower
and something of that sort; served time in state's prison.
Smith turned around and stated that he had never said
anything of that sort; denied having made the statement,
or having had any such conversation with any old gentle-
man on Pine street, or anywhere else,—sweeping in his
denial of it; but he said all that he knew about it, or had
ever heard about the subject, was what Wolff's particular
friend Collins had told him.  Collins and Hawley, I think
he said, had pointed Wolff out to him when he first came

here as an officer, as that kind of a man, describing him as such,—describing him as a safe-blower and a criminal. I think he said they took him down past Wolff's place and pointed Wolff out. If I recollect right, he said that they told him then that, if any jobs of that sort were perpetrated in the city, they had better look—that he had better look—in this direction; something of that sort; that is all that he had known.. He said further that he did, up to the time of Wolff's nomination, do all that he could do to prevent his nomination, but from the time of his nomination that he had said nothing to hurt him in his election. I believe that is what he said."

In this conversation the defendant promptly denied having made any charge of crime against plaintiff. He naturally referred to his former statement, and told Mr. Clink what that was. Is the law so strict as to hold a person guilty of slander when, in reply to such a charge, he refers to what he had formerly said, which was privileged? There is nothing in the record to indicate that any such position was taken upon the trial. In *Briggs* v. *Garrett, supra,* if Garrett had afterwards been told that he had charged Briggs with a crime, would he have been guilty of libel by stating to his informant that he had made this letter public before the election, and had referred to the letter? To so hold appears to me contrary to reason.

The judgment should be affirmed.

Moore, J., concurred with Grant, J.