# Richmond.

H. M. BROWN v. NORFOLK & WESTERN RAILWAY CO.

November 20, 1902.

1. LIBEL—*Privileged Communications—Bona Fides of Publication—Case at Bar.*—Whether the occasion for the publication of defamatory matter is privileged is a question of law for the court, but whether it has been used *bona fide* is a question of fact for the jury. In the case at bar, an officer of the defendant company, after full investigation and inquiry as to alleged misconduct of the plaintiff, an employee of the company, and fully satisfying himself of the truth of the allegations, dismissed him from the service of the company, and published the following order: "A fireman has been dismissed from the service for intimating that an officer of the company had cast reflections upon the ancestry of another officer, which was proved to be untrue." There was no extrinsic evidence tending to show malice on the part of the company or any of its officers or agents, and the conclusion of the officer making the investigation is in accordance with the weight of the evidence.

Held: The communication is privileged, was made in good faith, and hence is not actionable.

2. LIBEL—*Privileged Communications—Malice—Presumption—Demurrer to Evidence.*—If the communication is privileged the presumption is that there was no malice in its publication, and the burden is upon the plaintiff to prove malice. Where the truth or falsity of a privileged communication is in no wise involved, but only the question of good faith in its publication, malice will not be presumed even on a demurrer to the evidence by the defendant.

3. LIBEL—*Words Actionable Under Code, Sec. 2897—Demurrer—Waiver.*—The provision of sec. 2897 of the Code that no demurrer shall preclude a jury from passing on words made actionable by that section was inserted for the benefit of plaintiffs in actions brought under that section, and may be waived by them if they so elect.

Error to a judgment of the Circuit Court of Pulaski county, rendered March 23, 1900, in an action of trespass on the case

in libel, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*J. C. Wysor* and *D. S. Pollock*, for the plaintiff in error.

*A. A. Phlegar* and *Jos. I. Doran*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Plaintiff in error, Brown, had been a fireman in the employment of the N. & W. Railway Company for several years, and was well esteemed. In July, 1898, he was directed to take an engine from Radford to Bluefield, to be used in drawing an excursion train. This engine had been standing in the roundhouse at Radford without protection, and was in a rusty and filthy condition. Brown endeavored, as he states, to clean it by the use of oil and waste cotton, but was unable to do so. When the engine arrived at Roanoke its condition was reported to Henretta, the road foreman of engines, who summoned Brown before him. Brown reported to Henretta in obedience to the summons, and stated to him that he had done his best with the means at his disposal, and thereupon, as Brown alleges, Henretta used the following language: "Newman (meaning S. D. Newman, a master mechanic in the employment of the railway company), the damn son of a bitch is the cause of all this trouble; he ought to have had that engine jacket lyed-off," meaning that he ought to have had it washed with lye in order to remove the rust and filth. Brown repeated the remark which Henretta was alleged to have made in the presence of several other employees of the railway company, and it was finally communicated to Newman. Thereupon, Newman called upon Brown with reference to it, and Brown gave him a written statement of the occurrence as above narrated. When Newman, shortly thereafter, met Henretta, he asked him about this statement, and Henretta denied it, and asked him to get a

written statement from Brown and send it to him, which was done. Henretta also got a statement from Dickerson, who was present at the interview between Brown and himself, and then wrote to Pearce, division master mechanic, the following letter:

"The attached papers are self-explaining. I have only to state that fireman H. M. Brown has told a deliberate lie. Mr. Dickerson was witness to all my remarks when I was investigating fireman Brown's neglect to properly clean engine 706. His statement is attached. The papers are handed you that proper discipline may be applied.

Yours truly,

F. B. HENRETTA."

Pearce looked into the matter and reported the result of his enquiry in the following letter to W. H. Lewis, superintendent of motive power:

"Further concerning the case of engine No. 706, which you will remember came out on an excursion train in a very dirty condition, fireman claiming he worked two hours cleaning the engine, and engineman stating that he put ten minutes on it. Please note attached, from which it appears that Fireman Brown tried to get even by intimating that Mr. Henretta had cast reflections on the female ancestry of Mr. Newman, and lied about the matter. I think under circumstances that Mr. Brown's services should be dispensed with without further consideration.

J. S. PEARCE, D. M. M."

W. H. Lewis, as a result of his investigation, published the following order:

"A fireman has been dismissed from the service for intimating that an officer of the company had cast reflections upon the ancestry of another officer, which was proved to be untrue."

For the publication of this order the Norfolk & Western Railway Company was sued, the jury rendered a verdict against the defendant for $5,000, subject to the opinion of the court upon its demurrer to the evidence, the court entered judgment for the defendant, and the case is before us upon a writ of error awarded upon the petition of the plaintiff, Brown.

The contention of the railway company is that the order issued by Lewis discharging Brown from the service of the company, and assigning the reason for his action, was a privileged communication for which the defendant in error is not liable in damages unless the publication was malicious; that the company acted in good faith, after due investigation, and was inspired by no other motive than a desire to promote the efficiency of its service, and to give necessary information to its employees.

In *Chaffin* v. *Lynch*, 83 Va. 106, it was held "that to justify publication of defamatory matter the occasion must be privileged, and must be used *bona fide*, without malice. Whether the occasion be privileged, is a question of law for the court. Whether it has been used *bona fide*, is a question of fact for the jury."

We think it plain that the communication which is the subject of controversy here was privileged. Brown had made a statement with reference to what was said by his superior officer, who was enquiring into the manner in which his duty had been discharged. He reported that Henretta had at that interview used language in the highest degree insulting to Newman, a co-employee. Henretta denied the truth of the statement. It was enquired into in a due and orderly course of investigation, and the conclusion reached that Brown's version of the affair was untrue. Assuming for the moment that it was untrue, it cannot be doubted that Brown was guilty of a very grave offence, tending to produce ill-will, discord and strife among the employees of the company. If such were the case, it was altogether proper to discharge him from the service, and due to

him and all concerned that the reason for his discharge should be given, so as to fix the blame where it belonged, and to exonerate those who were innocent.

As was said by Judge Lewis in *Chaffin* v. *Lynch, supra:* "The reported cases on the subject of privileged communications are very numerous, and they show that while the law as to such communications is well settled, its application to particular cases is often attended with difficulty. They also show that the law in this particular was formerly more restricted than at present, the rule having been gradually extended, on the ground that it is to the interest of society that correct information should be obtained as to the character and standing of persons with whom others have business or social relations; so that it is now settled, as laid down by Baron Parke in the leading case of *Toogood* v. *Spyring,* 1 C. M. & R. 181, that a communication honestly made in the performance of a social duty, is no less privileged than one made in self-defence, or in the protection of one's own interest. And a communication made under such circumstances, and without malice, is protected, notwithstanding its imputations be false, or founded upon the most erroneous information."

Did the defendant company act in good faith in making the publication complained of, or was its action inspired by malice?

The question is not as to the truth or falsity of the publication. It is solely a question of good faith on the one hand and of malice on the other. In the interview between Henretta and Brown, at which the language with reference to Newman is said to have been used, there were present, in addition to these gentlemen, Dickerson and Stauffer. Brown, of course, swears that his account of the interview is the correct one. Henretta denies that it is true, and says that the language which he used was, "that it was a damn shame for Newman to let the engine come out in that fix." Stauffer says that he was in the room when Brown was being questioned, not more than five or six

feet distant, and that he did not hear the expression attributed by Brown to Henretta. Dickerson says that he was present at the interview in Henretta's office when Brown was called in; that he was not paying very much attention to what passed; that although he was within a few feet of them he did not hear Henretta make use of the expression imputed to him by Brown; that he twice heard him say, once at the office and just before that when examining the engine, "that it was a damn shame that this engine was allowed to come out of the round-house in such condition."

This case was heard in the trial court on a demurrer to the evidence, but the plaintiff voluntarily joined in the demurrer. Whether he could have been compelled to join if the action had been brought for common law libel simply it is unnecessary to decide. Section 2897 of the Code, however, provides that "all words which, from their usual construction and common acceptation, are construed as insults and tend to the breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." The latter provision was evidently inserted for the benefit of plaintiffs in actions to which the section is applicable, and they have the right to waive it if they choose. Counsel for the plaintiff in the trial court, bearing in mind this statute, intended to waive the benefit of it expressly, as is manifest from his bill of exception, which states that "after the evidence was all introduced to the jury, the defendant demurred to the testimony, and the plaintiff being willing to join therein, notwithstanding the last count of the declaration"—which was a count under section 2897 of the Code—"joined in the demurrer." This he had a right to do.

Notwithstanding the fact, however, that the case was heard on a demurrer to the evidence, we repeat that the question here is not as to the truth or falsity of any statement made in the published order, but merely as to the motive and intent by which the railway company was inspired. The communication being privi-

leged, plaintiff in error can only prevail by showing that the defendant availed itself of the occasion, not for the purpose of protecting its interests, but to gratify its ill-will. Upon this issue the burden of proof is upon the plaintiff in error.

The remarks of Judge Lewis in *Strode* v. *Clement*, 90 Va. 553, are applicable in this case: "There is no extrinsic evidence of malice, such as an antecedent grudge, or previous disputes, or anything of that sort, between the parties; but the contention is that the language used by the defendant is of itself evidence of malice. Undoubtedly strong or violent language disproportioned to the occasion may raise an inference of malice, and thus lose the privilege that otherwise would attach to it. But when the occasion is privileged, the tendency of the courts is not to submit the words to a too strict scrutiny, but rather to view them in the light of the facts as they appeared to the defendant; for the question is, not whether the imputations are true, but whether the words are such as the defendant might have honestly employed under the circumstances."

In this case there is no extrinsic evidence of malice, nor is the language complained of so violent or disproportioned to the occasion as to raise an inference of malice. In other words, there is no evidence of malice. If the issue before the jury had been as to the truth of Brown's account of what passed between Henretta and himself, the evidence would have required a verdict establishing as true Henretta's version, though a verdict in favor of the truth of Brown's statement could not with propriety have been disturbed by the court—*Tyree* v. *Harrison*, *ante* p. 540—but the fact that the publication complained of was only made after the controversy between Brown and Henretta had been investigated, and that it embodies the result of that enquiry in accordance with the weight of evidence, clothed in temperate and decorous language, in the absence of any extrinsic fact or circumstance having such tendency, leaves the case stripped of any evidence to support the charge of malice,

and the presumption that the publication was made in good faith must prevail.

In *Tyree* v. *Harrison, supra,* the jury rendered a verdict for the plaintiff in an action for libel. The court set aside that verdict, and at a subsequent trial rendered judgment for the defendant. Thereupon the plaintiff obtained a writ of error to this court, which reversed the case, and entered judgment for the plaintiff upon the first verdict. It was there held that it was for the jury to say which account was true, that given by Tyree or that given by Harrison; that the jury in the exercise of their function had seen fit to accept as true the statement of Tyree, and that according to his account the language used was so strong, violent and abusive as to warrant an inference of malice, and destroy the privilege that would otherwise attach to the communication, or at the least, that this court was unable to say that the verdict of the jury was so plainly against the weight of evidence as to justify the interference of the court.

In the case under consideration, we are not called upon to consider the weight or preponderance of evidence. There is no extrinsic evidence of malice, and the language of the communication of which complaint is made, and the manner of its publication do not justify the imputation of malice, but rather tend to repel it. It does not name the person at whom it is directed. It states in language as mild as could have been employed the conclusion of the person charged with the duty of making the investigation, and that conclusion was warranted by the preponderance of evidence, which includes the testimony of every disinterested witness present upon the occasion.

Upon the whole case, we are of opinion that the judgment complained of should be affirmed.

*Affirmed.*