# Staunton

HARRY ROSENBERG v. MARY ETTA MASON.

September 17, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*A. B. Hunt* and *Samuel M. Weinstein*, for the plaintiff in error.

*Victor H. Friend* and *Horace M. Fox*, for the defendant in error.

EPES, J., delivered the opinion of the court.

Harry Rosenberg owned and operated a retail store in the city of Roanoke under the name of National Clothiers, and employed Herman Feldman as the manager of this business. Feldman in his capacity as manager had authority to employ and discharge the other employees. Mrs. Mary Etta Mason, a young woman twenty-eight years of age, had been employed by Rosenberg before Feldman had been employed, and continued to work in the office department of this business from February, 1926, until she was discharged by Feldman on October 10, 1929.

In May, 1930, Mrs. Mason instituted her action, by notice of motion for judgment, in the Court of Law and Chancery of the city of Roanoke, against Harry Rosenberg as the sole defendant, seeking to recover $5,000.00 for insulting words used to her by Feldman at the time he discharged her.

The action was brought under section 5781, Code of Va., 1919, for the use of insulting words. The notice, which contains but one count, alleges that Harry Rosenberg, through his agent, servant and representative, Herman Feldman, "spoke of and concerning and to the undersigned (Mary Etta Mason) the false, scandalous, malicious, and

defamatory and insulting words following, which are from their usual construction and common acceptation construed as insults and tend to violence and breach of the peace * * *, to-wit:"

"Mrs. Mason, I guess this is quite a surprise to you, but I will have to let you go. I am doing this because things pop up. I have a couple of receipts in your handwriting, which are not entered in the book *and the money is missing.* It looks bad and I have to look out for myself so I will have to let you go. *The reason I moved your office upstairs was to get your office away from the cash.* You see I have to protect myself."

Feldman, introduced as a witness by Rosenberg, admitted that he spoke to Mrs. Mason substantially the words alleged other than those which we have italicized, but denied that he used the italicized words.

Rosenberg filed a plea of not guilty and his grounds of defense; but filed no plea of justification. His grounds of defense are rather a rambling statement, but it in effect set up the following defenses: (1) Feldman did not speak to or of Mrs. Mason the words alleged in the notice; (2) such words as were spoken by Feldman to Mrs. Mason were spoken on a privileged occasion, and the privilege of the occasion was not abused; (3) if the words alleged were used by Feldman to Mrs. Mason, Rosenberg did not know of, acquiesce in, ratify or confirm them; (4) if Feldman ever used to Mrs. Mason words which were false, scandalous or malicious "it was not within the scope of his employment and was without the knowledge of this defendant."

The jury returned a verdict in favor of the plaintiff for $1,000.00 upon which the court entered judgment.

The only witness introduced by the plaintiff, other than three character witnesses, was the plaintiff herself. The portions of her testimony material to the questions here involved are quoted below without indication of the omitted questions and answers.

*"Direct Examination.*

"Q. When did your connection with the National Clothiers, Harry Rosenberg, proprietor and owner, and Feldman, manager, cease?

"A. Last October—a year ago this month.

"Q. Just tell the jury what happened.

"A. Mr. Feldman came to me and said 'Mrs. Mason, I guess this is quite a surprise to you this evening, but I will have to let you go.' I asked him why, and he said, 'well, those things pop up here in the office, I have two receipts in your handwriting—you give receipts to customers and no entry made in the book, and the money is missing;' and I said, 'Mr. Feldman, that comes up once in a while;' I said, 'today a colored man brought in a five dollar receipt that you had given him two weeks ago, and there wasn't any entry made;' and he said, 'I have to look out for my own self, and I will have to let you go.' I said, 'does Harry Rosenberg know this?' He said, 'yes, I took it up with Harry two or three weeks ago and he said to let you go;' and he said he was having Mr. Ruble make an audit of the books, and the reason my office was moved to the second floor was to get me away from the cash and in order to protect himself he had to let me go.

"Q. You say that was on Saturday night at closing time?

"A. Yes, sir; nine o'clock at night.

"Q. Had you had any intimation prior to that time that he was going to fire you?

"A. No, sir.

"Q. Did you tell him (Mr. Rosenberg) what Mr. Feldman had said to you—what you just told the jury?

"A. I told Mr. Rosenberg before Mr. Ruble, the auditor, what Mr. Feldman had said to me. * * * I told Mr. Rosenberg exactly what I told here, what Mr. Feldman said to me, and then I told him to prove the fact.

"Q.   Did he or not repudiate what Mr. Feldman had done and said—Mr. Rosenberg?

"A.   Mr. Rosenberg told me that I should have come to him earlier, that he put me in there to watch Mr. Feldman and I should have come to him and told him about Mr. Feldman earlier.

"Q.   You have told the jury that you told Mr. Rosenberg that Mr. Feldman stated that he would have to let you go because he had found receipts that were not entered on the books, and that he moved you upstairs to get you away from the cash.   Did you or did you not tell Mr. Rosenberg that?

"A.   Yes, sir; I told him.

"Q.   Then what did Mr. Rosenberg say about those statements, if anything?

"A.   He said that Mr. Feldman told him that he had made up a couple of ten dollar shortages.

"Q.   All right, did Mr. Rosenberg rehire you or give you a job?

"A.   No, sir.

"Q.   Did you try to get another position?

"A.   Yes, sir.   About three days afterwards I called the manager of the A. & B. Clothing Store where I had worked four years before and asked him for a job, and he said, 'yes, Mrs. Mason,' he said, 'where are you?'   I said, 'I am home,' and he said, 'how soon can you get here?' and I said, 'it will be around three o'clock'—

"Q.   Do you know why you didn't (get) it?

"A.   The manager come in the store after I got there and said, 'Mrs. Mason, I am sorry I can't give you a job after talking to Mr. Feldman'—*   *   *

*"Cross-Examination.*

"Q.   Tell this jury whether or not when you went to Mr. Rosenberg if he said the slightest thing to you that was insulting or that offered you any affront in the world?

"A. No, sir.

"Q. He did not. Didn't you go to Mr. Rosenberg and ask him why you were fired?

"A. No, sir.

"Q. Didn't you also ask Mr. Ruble why you were fired?

"A. No, sir; Mr. Ruble didn't know I was fired when I walked in his office on Tuesday morning.

"Q. Weren't Mr. Ruble and Mr. Rosenberg both made acquainted with the fact that you were discharged right then and there (*i. e.* the Tuesday following) for the first time?

"A. No, sir. * * * Mr. Rosenberg knew it because Mr. Feldman had told me Saturday that he had taken it up with Mr. Harry and Mr. Harry told him two weeks ago to let me go.

"Q. When you were discharged there was not another soul that heard the words between you and Mr. Feldman, was there?

"A. Yes, sir.

"Q. Who?

"A. Miss Lane.

"Q. Anybody else?

"A. That is all.

"Q. Where is Miss Lane?

"A. I have not been able to locate her.

"Q. Well, if she heard it, she is the only one that heard it, isn't she?

"A. Yes, sir.

"Q. Isn't it true that Mr. Feldman on Saturday night called you off to yourself and told you that things were popping up there, and that he would have to let you go, that he was responsible and it made things look bad for him?

"A. He told me he had to protect himself.

"Q. And isn't that the reason that he gave you for letting you go, that he had to protect himself against entries which were inaccurate—that is a fact, isn't it?

"A. (No response)

"Q. When did you go to Mr. Harry Rosenberg, Mrs. Mason, about this matter?

"A. Tuesday morning.

"Q. Why did you go to him?

"A. Well, Mr. Rosenberg hired me—gave me the job, and I thought he should know it, so I went to Mr. Rosenberg and told him.

"Q. Tell us what you told Mr. Rosenberg now.

"A. I told Mr. Rosenberg Mr. Feldman said he had quite a surprise for me, and I asked him what it was, and he said he would have to let me go; I asked him why, and he said, 'well, little things pop up, and I have two receipts in the office in your handwriting that are not entered on the book, and the money is missing, and I have to protect myself, and I am letting you go.' I asked if Mr. Harry Rosenberg knew this, and he said, 'yes, I took it up with Harry two or three weeks ago and he told me to let you go;' and he told me he was having Mr. Ruble make an audit of the books, and the reason my office was moved from the first floor to the second floor was to get me away from the cash.

"Q. What did Mr. Rosenberg tell you?

"A. He said I should have come to him earlier, that he put me in there to watch Mr. Feldman, and I should have come to him and told him earlier."

There are material conflicts between the testimony of the plaintiff and that of Harry Rosenberg, Herman Feldman and other witnesses for the defendant, the most important of which is as to whether Feldman spoke to Mrs. Mason the words alleged in the notice which we have italicized. However, as there is nothing in the evidence

introduced by the defendant which in any way tends to strengthen Mrs. Mason's case as made by her own testimony, it is not necessary to consider further the evidence which the court permitted to be introduced by the defendant.

While the plaintiff was on the witness stand on cross-examination, counsel for defendant exhibited to her five receipts which defendant claimed had been given by plaintiff to customers for sums due defendant: A receipt to Francis Willard for $1.00, dated June 31st; a receipt to Mollie Jefferson for $4.00, dated June 3, 1929; two receipts to Charles Meadow for $5.00 each, dated September 14th and December 14, 1928; and a receipt to Annie Campbell for the deposit of $5.00. Objection was made by the plaintiff to the introduction of these receipts. Thereupon counsel for defendant stated to the court that he expected to prove by the plaintiff that these receipts were all in her handwriting; that the accounts of these persons were kept by the plaintiff and were in her handwriting; that there was no entry on the accounts of Francis Willard and Mollie Jefferson for the amounts receipted for to them, and that the receipts to Annie Campbell and the two receipts to Charles Meadow were each entered as $4.00 instead of $5.00; and that he desired to introduce this evidence "not for the purpose of charging that the plaintiff profited by the entries, but only for the purpose of showing inaccuracy of the entries made by her as a reason why she was not retained in service."

The court refused to permit the introduction of these receipts or the plaintiff to be interrogated with reference to them, because the defendant had filed no plea of justification. To this ruling of the court the defendant duly excepted.

Later the plaintiff was examined by counsel for the defendant before the judge, in the absence of the jury, with reference to these receipts. She was shown the five receipts and the accounts of these customers which were kept upon

cards. She testified that the receipts were in her hand-writing; that it was her duty to post these payments to the account cards of these customers; that she did not remember why the two receipts given Charles Meadow were not posted to his account; that the account cards of Francis Willard and Mollie Jefferson were kept and posted by her and do not contain any entries corresponding to the above mentioned receipts given to them by her; and that the card of Annie Campbell was made out by some other person who by mistake posted the Annie Campbell payment for which she receipted as having been made on the day after the date shown on the Annie Campbell receipt. As a possible explanation of the failure to post these entries to the account cards, she testified that she was frequently called upon by Feldman to leave the office and wait upon the trade, and says: "Lots of time I took these things and some one else would do the posting, like on Saturday, Monday he would turn the books over to somebody else and they did the posting, and let me do something else."

After this examination of the plaintiff before the judge, counsel for the defendant again moved the court to permit him to introduce these receipts and the testimony of the plaintiff appearing on this examination in evidence. But the court adhered to its former ruling, and overruled the motion, to which ruling the defendant duly excepted.

The refusal of the court to permit the introduction of these receipts and this testimony of the plaintiff, brought out under cross-examination, is assigned by the defendant as error.

This assignment of error is well made. The court erred in refusing to permit the introduction of such of these receipts as were known to the defendant at the time he spoke the words sued on, and such other of the testimony of Mrs. Mason as related to facts which were known to the defendant at the time he spoke the words. The pleadings,

the testimony of the plaintiff and statement of counsel for the defendant were such as to indicate that Feldman had knowledge of at least some of, if not all, the receipts and the facts to which Mrs. Mason testified.

The occasion upon which the words were spoken was clearly privileged, and this evidence was admissible both for the purpose of showing that the words did not exceed the scope of the privilege of the occasion, and to rebut any inference that they were spoken with actual malice.

No plea of the truth having been filed the plaintiff would have been entitled to an instruction that such evidence could not be considered as establishing the truth of the charges or imputations as a bar to a recovery or in mitigation of a recovery of compensatory damages; but she was not entitled to have the evidence of such of these facts as were known to the defendant excluded from the evidence where they were offered for the purpose of establishing the defendant's defense of privilege.

In considering the admissibility of this evidence we may dismiss from our minds the distinction that this is an action for insulting words under section 5781, Code of Va. 1919, and not an action for common law slander or libel. In Virginia both the truth and privilege are complete defenses in bar of any action for defamation, whether it be for common law slander or libel, or for insulting words; and the same rules of law with reference to the pleading and proof of these defenses apply in an action under section 5781 as in an action for common-law slander or libel. Section 6240, Code 1919; *Chaffin* v. *Lynch*, 83 Va. 106, 1 S. E. 803, and *Id.*, 84 Va. 884, 6 S. E. 474; *W. T. Grant Co.* v. *Owens*, 149 Va. 906, 141 S. E. 860. See also *Vaughan* v. *Lytton*, 126 Va. 671, 101 S. E. 865; *Rensch* v. *Roanoke Cold Storage Co.*, 91 Va. 534, 22 S. E. 358; *Chesapeake Ferry Co.* v. *Hudgins*, 155 Va. 874, 156 S. E. 429.

The trial court seems to have felt constrained to exclude

this evidence because of the general rule which this court, in *Williams Printing Co.* v. *Saunders*, 113 Va. 156, at pages 175 and 181, 73 S. E. 472, Ann. Cas. 1913E, 693, has stated in the following language:

"The truth of defamatory words, written or spoken, cannot be shown under the plea of not guilty, but * * * there must be a plea of justification." Page 181 of 113 Va., 73 S. E. 472, 478.

"The truth of the publication, if relied upon by the defendant, either as a bar or in mitigation of damages, must be shown under a special plea of justification, and not under a plea of not guilty." Page 175 of 113 Va., 73 S. E. 472, 476.

This rule, which is commonly stated by courts and text-writers in practically the same language as that used in *Williams Printing Co.* v. *Saunders, supra,* is a well established general rule, which has been recognized, discussed or applied, in the Virginia cases cited in the footnote.[1] However, the true scope and proper application of the rule has been a much mooted question ever since it was first promulgated in its present form by the decision of the Court of King's Bench in 1743 in the case of *Underwood* v. *Parks*, 2 Strange 1200. (*Huson* v. *Dale*, 19 Mich. 17, 2 Am. Rep. 66.)

Whatever may be its true scope and proper application where the defense of privilege is not in issue, this rule has no application to exclude any evidence relevant and

---

[1] *Cheatwood* v. *Mayo*, 5 Munf. (19 Va.) 16; *McAlexander* v. *Harris* 6 Munf. (20 Va.) 465; *Grant* v. *Hover*, 6 Munf. (20 Va.) 13; *McNutt* v. *Young* 8 Leigh (35 Va.) 542; *Lincoln* v. *Chrisman*, 10 Leigh (37 Va.) 338, 343; *Brooks* v. *Calloway*, 12 Leigh (39 Va.) 466; *Moseley* v. *Moss*, 6 Gratt. (47 Va.) 534; *Bourland* v. *Eidson*, 8 Gratt. (49 Va.) 27; *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693; *Carpenter* v. *Meredith*, 122 Va. 446, 96 S. E. 635; *Mopsikov* v. *Cook*, 122 Va. 579, 95 S. E. 426; *White* v. *White*, 129 Va. 621, 106 S. E. 350; *Times-Dispatch Pub. Co.* v. *Zoll*, 148 Va. 850, 139 S. E. 505; *Bragg* v. *Elmore*, 152 Va. 312, 147 S. E. 275; *Thalhimer Bros.* v. *Shaw*, 156 Va. 863, 159 S. E. 87. See, also, *Byrd* v. *Com.*, 124 Va. 833, 98 S. E. 632, holding the truth not a bar to a criminal prosecution for insulting words, but that evidence of the truth of the charges may in such cases be introduced in mitigation of damages.

material to establish the fact that the alleged defamatory words constituted a privileged communication or publication, when that defense has been interposed under the general issue in good faith, and the evidence is offered for the purpose of establishing that defense under circumstances which show its relevancy and materiality for that purpose. This is true, even though such evidence may also tend to prove the truth of the charge, or be sufficient, had the truth been specially pleaded as a bar to the action, to sustain a finding by the jury that the defamatory charge is true.[2]

▆▆ Where the defense of privilege has been interposed under the general issue as a defense, the test of the admissibility of evidence offered to prove the defense is its *relevancy and materiality* to establish that the words sued on constituted a privileged communication or publication, not whether such evidence tends to prove, or proves, the truth of the charge. But it must be borne in mind that evidence is never relevant to prove privilege *merely* because it tends

---

[2] *Fairman* v. *Ives*, 5 B. & Ald. 642; *Rumsey* v. *Webb*, 1 Carrington & Marsh, 63; *Wills* v. *Carman*, 17 Ont. Rep. 223; *Brown* v. *Moyer*, 23 Ont. Rep. 222; *Remington* v. *Congdon*, 2 Pick. (Mass.) 310, 13 Am. Dec. 431; *Bradley* v. *Heath*, 12 Pick. (Mass.) 163, 22 Am. Dec. 418; *Conrad* v. *Roberts*, 95 Kan. 180, 147 Pac. 795, Ann. Cas. 1917E, 891, L. R. A. 1915E, 131; *Cranfill* v. *Hayden*, 22 Tex. Civ. App. 656, 55 S. W. 805; *Browne* v. *Brick* (Tex. Civ. App.), 56 S. W. 995; *Barrows* v. *Carpenter*, 1 Cliff. 204, Fed. Cas. No. 1058; *Atwater* v. *Morning News Co.*, 67 Conn. 505, 34 Atl. 865; *Knight* v. *Foster*, 39 N. H. 576; *Montgomery* v. *Knox*, 23 Fla. 595, 3 So. 211; *Coogler* v. *Rhodes*, 38 Fla. 240, 21 So. 109, 56 Am. St. Rep. 170; *Merrey* v. *Guardian Pub. Co.*, 79 N. J. L. 177, 74 Atl. 464, affirmed 81 N. J. L. 632, 80 Atl. 331; and *Edwards* v. *Chandler*, 14 Mich. 475, 90 Am. Dec. 249, some of the reasoning in which is questionable.

See also the following cases in which the reasoning of the court or language used by the court tends to support the statement made in the text: *Huson* v. *Dale*, 19 Mich. 17, 35-36, 2 Am. Rep. 66, opinion by Christian, J., concurred in by Cooley, C. J.; *Dodge* v. *Gilman*, 122 Minn. 177, 142 N. W. 147, 47 L. R. A. (N. S.) 1098, Ann. Cas. 1914D, 894; *McLaughlin* v. *Cowley*, 127 Mass. 316; *Jarnigan* v. *Fleming*, 43 Miss. 710, 5 Am. Rep. 514; *Cook* v. *Globe Printing Co.*, 227 Mo. 471, 127 S. W. 332; *Earl of Leicester* v. *Walter* (1809), 2 Campb. 251; *Bush* v. *Prosser*, 13 Barb. (N. Y.) at page 227; *Williams* v. *Miner*, 18 Conn. 464; *Swift* v. *Dickerman*, 31 Conn. 285; *Advertiser Co.* v. *Jones*, 169 Ala. 196, 53 So. 759; *Dorn & McGinty* v. *Cooper*, 139 Iowa 742, 117 N. W. 1, 118 N. W. 35, 16 Ann. Cas. 744; *Smith* v. *Rodecap*, 5 Ind. App. 79, 31 N. E. 479.

to prove, or proves, the truth of the charge. The fact that the charge is false is not alone sufficient to defeat the privilege of an occasion; nor can the fact that the charge is true ever of *itself* constitute the words a privileged communication or publication.

█ The statement of the law contained in the two preceding paragraphs is sustained upon principle and by the decisions from other jurisdictions cited in footnote 2. It is supported by the decision of this court in *Bragg* v. *Elmore*, 152 Va. 312, 147 S. E. 275, and finds recognition in *Mopsikov* v. *Cook*, 122 Va. 579, 95 S. E. 426; *Times-Dispatch Pub. Co.* v. *Zoll*, 148 Va. 850, 139 S. E. 505; *Thalhimer Bros.* v. *Shaw*, 156 Va. 863, 159 S. E. 87; and a careful search of the reported Virginia cases on this subject discloses no case in which, where under the general issue the defense of privilege has been in fact interposed, any evidence *relevant and material* to establish that defense has been held inadmissible because it tended to prove, or proved, the truth of the defamatory charge.

The original records show that in *Brown* v. *Norfolk & W. Ry. Co.*, 100 Va. 619, 42 S. E. 664, 60 L. R. A. 472; *Chalkley* v. *Atlantic Coast Line R. Co.*, 150 Va. 301, 143 S. E. 631, and *Chesapeake Ferry Co.* v. *Hudgins*, 155 Va. 874, 156 S. E. 429, the general issue was the only plea filed; and that is *Strode* v. *Clement*, 90 Va. 553, 19 S. E. 177, the only plea filed was the general issue, but there was a stipulation that any evidence might be introduced thereunder which would be introduced under a special plea of privilege which was tendered. In all these cases evidence relevant and material to prove the defense of privilege was admitted, though such evidence tended to prove the truth of the defamatory charge. While no point as to the admissibility of such evidence seems to have been made, the court treats it as having been properly introduced.[3]

---

[3] In *Chaffin* v. *Lynch*, 83 Va. 106, 1 S. E. 803, and *Id.*, 84 Va. 884, 6 S. E. 474, such evidence was also introduced under the general issue; but there

Neither *Underwood* v. *Parks* (1743), *supra*, in which this general rule was first announced, nor any of the three English cases[4] preceding that decision in which the rule had its development, was a case in which the defense of privilege was in any way involved. Most of the cases, English and American, in which this general rule has been recognized, discussed or applied have been cases which fall into one or the other of the below classifications, and the evidence in question was offered in mitigation of damages and not for the purpose of establishing the defense of privilege: (1) Cases in which the defense of privilege was manifestly inapplicable and it was not interposed[5]; (2) cases in which, though it was attempted to interpose the defense of privilege, the court held as a matter of law either (a) that the occasion was not privileged, or (b) that the words used *in and of themselves* exceeded the scope of the privilege of the occasion.[6] All the Virginia cases in which the general rule has been recognized, discussed, or applied fall into one or the other of the above classes with the exception of *Mopsikov* v. *Cook*, 122 Va. 579, 95 S. E. 426; *Times-Dispatch Pub. Co.* v. *Zoll*, 148 Va. 850, 139 S. E. 505; *Bragg* v. *Elmore*, 152 Va. 312, 147 S. E. 275; and *Thalhimer Bros.* v. *Shaw*, 156 Va. 863, 159 S. E. 87. While in the Virginia cases and in cases from other jurisdictions falling in these classifications some very broad and comprehensive language is used, it

---

was a stipulation that any evidence might be introduced under the general issue that could be introduced "under a proper special plea," without limiting the special plea to a special plea of privilege as in *Strode* v. *Clement, supra.*

[4] *Dennis* v. *Pawling* (1716), not reported, but cited in 12 Viner, 2 ed. page 159, cl. 16; *Bishop of Salisbury* (*or Scarum*) v. *Nash* (1714–1725, probably after 1718) not reported, but cited in Buller's Nisi Prius (1771) at page 9–10, and in Willes 19, at page 24; *Smith* v. *Richardson* (1737), Willes 19, Barnes 195, Comyns Rep. 551.

[5] *Cheatwood* v. *Mayo*, 5 Munf. (19 Va.) 16; *McAlexander* v. *Harris*, 6 Munf. (20 Va.) 465; *Grant* v. *Hover*, 6 Munf. (20 Va.) 13; *McNutt* v. *Young*, 8 Leigh (35 Va.) 542; *Bourland* v. *Eidson*, 8 Gratt. (49 Va.) 27; *White* v. *White*, 129 Va. 621, 106 S. E. 350, fall in this classification.

[6] *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693, and *Carpenter* v. *Meredith*, 122 Va. 446, 96 S. E. 635, fall in subdivision b of this classification.

must be read, construed and applied as precedent in the light of the facts of the case in which it is used.

In an extensive, though not exhaustive, examination of the cases in which this general rule has been discussed, with the exception of the two cases next below cited, we have found no case in which it may be said that the court states in terms that, where the defense of privilege is interposed under the general issue, evidence relevant and material to establish that defense is rendered inadmissible by reason of the fact that it tends to prove the truth of the charge.

In *Fero* v. *Ruscoe*, 4 N. Y. 162, it is said: "When the defendant pleads the general issue, and nothing else, he may, if he can, show that the alleged slander was a privileged communication. But he is not at liberty to prove the truth of the charge, nor to give evidence tending in that direction. He can neither do it as a complete defense, nor by way of mitigating damages." This, however, was a case in which the defense of privilege was not interposed; and it is by no means plain that the court meant to say that evidence tending to prove the truth of the charge is inadmissible to establish the defense of privilege though relevant and material for that purpose. But if it did mean to say this, it is a pure dictum.

In *Elmore* v. *Atlantic Coast Line R. Co.*, 189 N. C. 658, 127 S. E. 710, 717, the court says: "Defendant in its answer had the legal right under the statute to set up the plea of justification, to show the truth of the charge.  *  *  *  It did not do this, but relied on, as its defense, privileged communication and denial. It could not offer any evidence to show the truth of the charge nor any evidence which tended to show the truth of the charge. The defendant had already been permitted, for the purpose of showing the good faith of Superintendent Cobb, to prove that he had these affidavits on the occasion of speaking the words, and also to show the names of the persons who made the affi-

davits and * * * to state the purpose of these affidavits. This was all that was necessary to be shown as a basis of the alleged good faith of Superintendent Cobb. After this was done, the affidavits themselves could only tend to prove the truth of the charge."

But upon a critical examination of this case, it is seen that the court in fact recognizes that evidence tending in the direction of proving the truth was admissible; and that the real reason given by it for excluding these affidavits was that "the affidavits themselves could *only* tend to prove the truth of the charge," *i. e.*, were not relevant and material to prove the defense of privilege, but only to prove the truth of the charge.

Defamatory words cannot constitute a privileged communication or publication unless the occasion upon which they are used be either absolutely or qualifiedly privileged. But if the occasion be only qualifiedly privileged, three things must concur to render the communication or publication privileged (that is to establish the defense of privilege): (1) The occasion upon which the words are used must be privileged; (2) the words used must not transcend the scope of the privilege of the occasion; and (3) the words must be used in good faith, without *actual* malice.

Whatever facts are relevant and material to establish any one, or more, of these three essential elements of the defense of privilege are necessarily relevant and material to the defense of privilege; and the same facts which tend most strongly to prove the truth of the charges, may also be not only relevant, but essential, to establish the defense of privilege. .

The facts and circumstances leading up to and surrounding the use of the alleged defamatory words are often relevant and very material upon the question of whether the occasion was privileged and to define the scope of the privilege of the occasion, if it be qualifiedly privileged. So

also, where it appears from the plaintiff's pleading or the evidence introduced that the occasion was qualifiedly privileged, the facts and circumstances surrounding the use of the words are often relevant and material to show whether the words used transcend the scope of the privilege of the occasion. But the very facts which lead up to and surround the use of the words and constitute a part of the *res gestae* may also tend very strongly to prove the truth of the charge made.

■■ If the evidence introduced, as a matter of law, fails to show that the occasion is privileged or shows that the words used of themselves transcended the scope of the privilege of the occasion, the defense must fail regardless of the presence or absence of actual malice; and evidence then offered tending to prove the absence of actual malice is immaterial in so far as it relates to the establishment of the defense of privilege. But where the evidence introduced shows that the occasion is privileged and the words used do not of themselves transcend the scope of the privilege of the occasion, any evidence relevant to show that they were used in good faith, without *actual* malice, and particularly any evidence tending to show that the defendant believed the words to be true when he used them, is material to the issue.

■ The *belief* of the defendant when he made the charges that they were true and the existence of reasonable grounds for such belief are very material facts to disprove *actual* malice or rebut any inference of the existence of actual malice. There are but two ways in which the defendant may prove these facts: (1) By proving the existence of facts within his knowledge reasonably tending to produce such a belief, and (2) by proving that he received such information from others under such circumstances as reasonably induced him to believe that the charges were true.

■ The same facts which prove that the defendant be-

lieved the charges upon reasonable grounds for such belief almost necessarily have some tendency to prove the truth of the charges; and the stronger their tendency to prove the truth of the charges, the greater is their weight to prove that the defendant believed them to be true and had reasonable grounds for so doing, and to establish the defense of privilege. To admit such evidence when it tends weakly to prove both the truth of the charge and the absence of actual malice, and exclude it when it tends strongly to disprove actual malice, because it also tends strongly to prove the truth of the charge, is illogical, and a violation of that cardinal rule of evidence that evidence relevant and material for one purpose is not rendered inadmissible for that purpose by the fact that it is inadmissible for some other purpose.

At common law, because of the rule requiring singleness of issue, if the plea of the truth was filed, the defense of privilege could not be made; for it could not be proven under the plea of truth and the defendant could file only one plea.

Therefore, at common law to have applied a rule making evidence relevant and material to establish the defense of privilege inadmissible under the general issue to establish such defense, because such evidence tended to prove the truth of the charge, would have been to have denied to the defendant the right to make the defense of privilege in many instances in which the words used in fact constituted a privileged communication or publication, even though subsequent to making the defamatory charge the defendant had become convinced that the charge was untrue and that the defense of the truth should not, and could not, be made.

Under the statute permitting several pleas to be filed (4 & 5 Queen Anne, chapter 16, section 4, and section 6107 Code of Va. 1919), in many instances such a rule would force

the defendant to plead specially and attempt to prove that the charge was true where he had become convinced since he made it that it was not true; for in no other way could he introduce in support of the defense of privilege the evidence necessary to show that when he made the charge he believed it to be true and used the words in good faith. It is further to be borne in mind in this connection that where in pursuance of the authority of such statutes, two or more pleas are filed, in trying any one of them and in determining what evidence is admissible under that plea, the court cannot look to the existence of any other of them. *McNutt* v. *Young*, 8 Leigh (35 Va.) 542, 553; *Norfolk Hosiery, etc., Mills* v. *Aetna, etc., Co.*, 124 Va. 221, 234, 98 S. E. 43.

In *McNutt* v. *Young, supra*, which was an action for slander in which both the plea of not guilty and a special plea of justification were filed, Cabell, J., says: "With us inconsistent pleas are allowable, and in trying one the court cannot look to the existence of the other; for if it did, they would neutralize each other. Hence we look upon each branch of the pleading as totally separate and distinct from every other, and the defenses under one cannot be straitened or curtailed by the existence of the other."

Recognizing the gross injustice of the general rule announced in *Underwood* v. *Parks* when carried to the extent of excluding all evidence offered for the purpose of barring or mitigating the recovery of punitive damages, by proving absence of actual malice, many of the courts have held that facts and circumstances, though tending to prove the truth of the charge, may be received *in mitigation* of damages under the general issue, provided they fall short of establishing the truth of the charge. *Huson* v. *Dale*, 19 Mich. 17, 33, 2 Am. Rep. 66.

It has been suggested that in order to escape the illogical and manifestly unjust results that would result from holding

the general rule announced in *Underwood* v. *Parks* applicable to evidence relevant and material to establish the defense of privilege, a similar rule should be held to apply to evidence introduced to establish the defense of privilege.

While in practice such a rule may be, and, where the evidence was introduced in mitigation of punitive damages, has been so applied as to do substantial justice in most cases, it is an illogical rule, born of an effort to escape the injustice resulting from the application of the general rule to cases to which it is not properly applicable. Whatever may be the necessity for resort to such a rule where the evidence in question is offered in mitigation of damages, there is no sound reason for resorting to such a rule where the evidence in question is relevant and material to prove privilege and is offered to establish that defense. On principle, the general rule of *Underwood* v. *Parks* has no application to exclude such evidence under such circumstances.

When we come to examine the correctness on principle of the statement heretofore made as to the admissibility, under the general issue to establish the defense of privilege, of evidence tending to prove the truth of the charge, we must bear in mind the fundamental differences inherent in these four defenses: (1) The defense that the charge is true as a bar to the action; (2) the defense that the damages recoverable should be mitigated because the charge is true; (3) the defense that the recovery of punitive damages is barred because there was no actual malice, or mitigated because there was only a slight degree of actual malice; (4) the defense that the words used constituted a privileged communication or publication as a bar to the action.

At common law from a very early time (long prior to the period 1716–1743) the *bare* fact that the alleged defamatory charge is true has been a complete defense in bar of an action for slander or libel, regardless of the nature of the

occasion upon which or the motive with which the defamatory words were spoken or written.[7]

But under the ancient conception the *bare* fact that the charge was true was given a double aspect. While it was held to be a complete defense in bar of the action, it was also regarded as, and held to be, a fact which, *ex proprio vigore*, was proper to be considered in fixing the amount of damages recoverable, even to the extent of defeating a recovery of compensatory damages and reducing the recovery to nominal damages. (See authorities cited in note 7.)

So firmly was this conception fixed and so pervasive was its influence, that some text-writers have concluded that originally the conception in civil cases was practically the same as that in criminal cases, which was, and is, that the truth of the charge is not a bar to the prosecution, but may be considered in mitigation in fixing the punishment;[8] and that the conception of the truth as a defense in bar of the action is a development from and an extension of the older conception that the *bare* fact of the truth of the charge might, and should be, considered in determining the amount of damages recoverable. Townsend on Slander & Libel, (4 ed.), pages 309–310.

The conception that the *bare* fact that the charge is true

---

[7] *Lake* v. *Hatton* (1614–1625), Hobart 252; *Howard* v. *Golding-Prentice* (1662), 1 Keble 286; *Smithies* v. *Harrison* (1702), 1 Ld. Raymond 727; Anonymous (1707), 11 Modern 99; *Dennis* v. *Pawling* (1716), cited in 12 Viner (2d ed.) 1791–1794, page 159, cl. 16; *Bishop of Salisbury* v. *Nash* (1714–1725, probably after 1718), cited in *Smith* v. *Richardson* below, and as *Bishop of Scarum* v. *Nash*, in Buller's Nisi Prius, pages 9–10; *Smith* v. *Richardson* (1737), Willes 19, Barnes 195, Comyns Rep. 551, fullest report being in Willes 19; *Underwood* v. *Parks* (1743), 2 Strange 1200; *Beavor* v. *Hides* (1766), 2 Wilson 300; Blackstone's Com. (1765), Bk. 3, chapter 8, page 125; Buller's Nisi Prius (1771), page 9; Starke on Slander & Libel (ed. 1852) 230–234; Newell on Slander & Libel (4 ed.), page 764.

While it has been questioned whether the truth was a defense *in bar* of the action prior to 1706–1743 (Townsend on Slander & Libel, [4 ed.] 309–310), the authorities above cited, which include all the reported cases decided prior to 1743 bearing on the point which we have been able to find, we think fully support the statement in the text.

[8] *Byrd* v. *Com.*, 124 Va. 833, 98 S. E. 632; Newell on Slander & Libel, (4 ed.) page 768; 8 R. C. L. section 307, page 286.

(without more) has any relevancy to the question of the amount of damages recoverable has been shown to be fallacious with the more accurate development of legal reasoning; and the theory, which co-ordinately prevailed, that all damages, except perhaps for items of special damage, recoverable in civil action for slander or libel is in some sense punitive has been abandoned. *Howard* v. *Sexton*, 4 N. Y. 161; *Bush* v. *Prosser*, 13 Barb. (N. Y.) 221, at page 227. But prior to *Underwood* v. *Parks* both of these views prevailed, and the persistence of their influence has been such that even to this day they are responsible for confusion of thought and inaccuracy of statement in discussing the scope and application of the general rule laid down in *Underwood* v. *Parks*.

From early times the distinction between special and general damages was clearly recognized. But it was not until after the decision of *Underwood* v. *Parks* that the clear-cut distinction now known to the law was made between compensatory damages and punitive damages. The modern view, which is now generally accepted as the correct view, is that the action of slander and libel is designed to afford the plaintiff compensation for the actual injury inflicted upon him by the defamatory charge made by the defendant, to which punitive damages may be added only when the charge was made with actual malice towards the plaintiff.

Under this view the *bare* fact that the charge was true is never relevant to the question of the amount of either compensatory or punitive damages, and with some few exceptions, which need not be noticed here, evidence tending to prove the truth of the charge is irrelevant to the question of compensatory damages recoverable. But evidence tending to prove that the defendant believed the charge to be true when he made it is both relevant and material whenever it is sought to recover punitive damages.

However, many courts in applying the general rule of *Underwood* v. *Parks* seem to have failed to give recognition to the fundamental difference between admitting evidence in mitigation of compensatory damages and in admitting evidence in bar of or in mitigation of punitive damages as now known to the law.

At common law from very early times the fact that the defamatory charge constituted a privileged communication or publication has been a complete defense in bar of a civil action for slander or libel, even though the charge made was false; and it has never been intimated so far as we can find that it was ever regarded as a matter in mitigation of damages.

From a very early time (long prior to the decision in *Underwood* v. *Parks*) the rule had been that where the truth was relied upon as a complete defense in bar of the action it must be specially pleaded. (See authorities cited in note 7, *ante*.) But prior to the decision in *Underwood* v. *Parks* the general rule was that, subject to some restrictions, the truth of the charge (not merely evidence tending to prove the truth of the charge) might be shown under the general issue in mitigation of damages.[9]

The earliest case cited, in which evidence tending to prove the truth of the charge was admitted in mitigation of damages (*Howard* v. *Golding-Prentice*, 1662), admitted the evidence on the ground that it was "good evidence to induce belief." But subsequent cases indicate that this distinction, if it was ever controlling, was later lost; and that evidence tending to prove, or proving the truth of the charge was admitted under the general issue in mitigation of damages

---

[9] *Howard* v. *Golding-Prentice* (1662), 1 Keble 286; *Smithies* v. *Harrison* (1702), 1 Ld. Raymond 727; *Bishop of Salisbury* v. *Nash* (1714–1725), cited in Willes 19, at page 24, and in Buller's Nisi Prius, pages 9–10; *Smith* v. *Richardson* (1737), Willes 19, Barnes 195, Comyns Rep. 551; *Underwood* v. *Parks* (1743), 2 Strange 1200; Buller's Nisi Prius (1771), pages 9–10. See, also *Dennis* v. *Pawling* (1716), 12 Viner, page 159, cl. 16.

merely because it tended to prove the truth of the charge without any clearly defined regard to whether such evidence was relevant to prove that the charge was made in good faith, under the belief that it was true, and without actual malice; and that when so introduced such evidence was permitted to be considered in mitigation of both compensatory and punitive damages as now known to the law. It is also to be borne in mind that matter which went only to the mitigation of damages could not be specially pleaded at common law for it does not constitute a complete defense and such matter could only be shown under the general issue, or under some special plea setting up a complete defense. So when the truth was relied upon not in bar but only in mitigation of damages the general issue was the proper plea.

But at common law from the earliest times the rule has been, and still is in Virginia, that while the defense of privilege in bar of an action for slander or libel may be specially pleaded, it may always be proven under the general issue.

Evidence offered to establish the defense of privilege is evidence introduced *in bar* of the action, and *not in mitigation* of damages. The right to make a complete defense under the general issue implies the right to prove all facts relevant and material to establish that defense. And, so far as we have been able to ascertain in a very careful examination of the authorities, it was never prior to the decision in *Underwood* v. *Parks* intimated that the rule which required the truth to be specially pleaded where relied upon in bar of the action, was applicable to exclude evidence relevant and material to establish the defense of privilege; nor do we understand the decision in *Underwood* v. *Parks* either in terms or by necessary implication to so hold. Because of the rule requiring singleness of issue, as we have before pointed out, to have so held would have

been to deny to the defendant the right to make the defense of privilege in many cases in which the communication was in fact privileged.

Such were the rules of law and pleading when the case of *Underwood* v. *Parks*, 2 Strange 1200, was decided in 1743, the very meagre and brief report of which reads as follows: "In an action for words, the defendant pleaded not guilty, and offered to prove the words to be true, in mitigation of damages: which the chief justice refused to permit, saying that at a meeting of all the judges upon a case that arose in the Common Pleas[10], a large majority of them had determined not to allow it for the future, but that it should be pleaded, whereby the plaintiff might be prepared to defend himself, as well as to prove the speaking of the words. That this was now a general rule amongst them all, which no judge would think himself at liberty to depart from, and that it extended to all sort of words, and not barely to such as imported a charge of felony."

"In this case the defendant's offer was to prove under the plea of not guilty, *in mitigation of damages, the truth of the words charged as slanderous.*" *Huson* v. *Dale*, 19 Mich. at page 34, 2 Am. Rep. 66. While the court itself recognizes that in this decision it is promulgating a different rule from that which formerly prevailed with relation to the admission under the general issue of evidence to prove the truth *in mitigation* of damages, the case did not involve the defense of privilege; and there is nothing in it (or the cases which preceded it) which intimates or suggests that the ruling therein made was intended to apply to cases in which the evidence was offered to establish the defense of privilege, or to make any change in the existing rules of pleading or evidence, except where the evidence in question was offered *in mitigation* of damages.

---

[10] *Smith* v. *Richardson* (1737), Willes 19, which case should be read for a clear comprehension of the ruling of the court in *Underwood* v. *Parks*.

The courts of England and America have recognized the authority of the rule laid down in *Underwood* v. *Parks* and professed to follow it, though with great diversity of interpretation and difference of opinion as to its true scope and application; but in a very extended search of the authorities we have found no case in which the court admits going any further than it felt constrained to go by the decision in *Underwood* v. *Parks*.

*Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693, seems to have caused some misapprehension on the part of the bench and bar. But when this case is analyzed and the facts of the case and the issues before the court are kept in mind, it is not authority for the exclusion of any evidence relevant and material to establish the defense of privilege when that defense is interposed under the general issue. This will appear from a careful analysis of the opinion of the court, and is even more apparent when the opinion is examined in the light of the record and the petition for writ of error filed in the case.

No evidence in any way tending to prove the truth of the charges which was offered or sought to be brought out by any defendant was excluded in that case; and no assignment of error alleges that any such evidence was excluded. On the contrary, the fifth assignment of error was that the court erred in instructing the jury that there had been "no proof offered by the defendants that the charges sued on are true;" and in support of that assignment of error, the plaintiffs in error assert that the evidence introduced by both plaintiff and defendants contained sufficient evidence tending to prove the truth of the charges to warrant the jury in drawing the inference that the charges made in the publications sued on were true.

The declaration contained three counts, two for common law libel and the other for the use of insulting words under section 5781, Code 1919 (section 2897, Code 1887). The

words declared upon in each count were published during a political campaign in a newspaper opposing the election of Saunders, who was a candidate for office; and they imputed to Saunders in abusive terms moral turpitude, political dishonesty and corruption.

The only plea filed was not guilty, but upon the demand of the plaintiff, the defendants stated their grounds of defense to be: "1, Not guilty; 2. privileged communications; 3, fair or proper criticism or comment upon the plaintiff when running for office or position; 4, no malice; 5, erroneous construction of the words of the publication."

The jury returned a verdict for $1,600.00 upon evidence which is ample to sustain such award as an award of compensatory damages.

The only assignments of error made were that the court erred in giving and refusing certain instructions. At the request of the plaintiff the trial court instructed the jury, in effect, as follows:

(a) The occasion of these publications was qualifiedly privileged, but the language used and the charges and imputations made in the publications in and of themselves, as a matter of law, exceeded the scope of the privilege of the occasion (which was that of fair criticism and comment upon a candidate for office), because they imputed to him crime and moral delinquency; and, therefore, the publications were as a matter of law *not privileged publications,* even if published with the honest belief that they were true.

(b) As there was "no plea filed nor proof offered by the defendants that the charges sued on were true, the jury must consider that said charges are untrue; and the said articles not being privileged, the publication of them was an unlawful act on the part of the defendants for which they must answer in damages."

(c) The plaintiff was entitled to recover "such sum by way of damages as would fairly and adequately compensate

him" for any injury he might have actually suffered; and that "if the jury believe from all the evidence in the case that the acts complained of were influenced by actual malice or a design to injure or oppress the plaintiff" or a reckless disregard of the rights of the plaintiff, the jury might award the plaintiff in addition to compensatory damages, punitive or exemplary damages as a punishment to the defendants and a deterrent to others.

The defendants objected to these instructions, and on their part offered, among others, the instructions below noted setting forth their theory of the law, which the court refused to give.

Instruction No. 4, offered by the defendant and refused by the court, told the jury: "The publications complained of, having been written and published of the plaintiff as a candidate, are privileged publications, if you believe from the evidence, *first, that the statements therein complained of were true,* or *second,* that although untrue" the defendants made the statements honestly believing them to be true, "and that such belief was justified by the facts as you find them, * *. On the other hand, if you believe that the * * publications were not true and could not have any reasonable basis or foundation in the said evidence produced before you, then you must hold that the occasion was not privileged." (Italics ours.)

Instruction No. 5, offered by the defendant and refused by the court, told the jury: If they believed that the publications were privileged, as set forth in instruction No. 4, the plaintiff could not recover in this action, even if the publications were false, unless the jury believed that the defendant in making the publications was actuated by actual malice; and that the burden was on the plaintiff to prove the existence of actual malice.

Instruction No. 1, offered by the defendant and refused by the court, covered much the same ground as instruction

No. 5, but also told the jury that "the presumption of law is that he (the defendant) * * published them (the words sued on) honestly, believing in the truth of such statements, although such statements in fact were false, or founded upon the most erroneous information."

After instructing the jury that, as the publications were not privileged, the honest belief of the defendants that the charges were true could not defeat the plaintiff's right to recover compensatory damages, the court instructed the jury as follows:

"Such honest belief may be considered by the jury in determining whether exemplary or punitive damages should be awarded on the ground of actual malice * * (if) based upon reasonable and probable cause for believing in the truth of said charges. Reasonable and probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the information thereof relied upon by the defendants, that the plaintiff was guilty of the offenses charged in said publication."

The court held that the instructions given for the plaintiff were correct; that while the occasion was privileged, the publications in and of themselves as a matter of law exceeded the scope of the privilege of the occasion, and that, therefore, the publications were not privileged publications. This being true instructions No. 5 and No. 1 offered by the defendant were clearly not proper instructions. The defense of privilege had failed, and evidence to show absence of actual malice was then immaterial in so far as it related to the defense of privilege as a bar to the action. In such a case absence of actual malice cannot defeat a recovery of compensatory damages. This instruction told the jury that as the occasion was privileged, they must find for the defendant if they believed that the charges sued upon were true, or in effect, that where the occasion is privileged, the

*bare* fact that the charge is true may be shown under the general issue in bar of the action, which is not and never has been true from certainly long prior to the decision in *Underwood* v. *Parks.*

The court in discussing the general rule which was announced in *Underwood* v. *Parks, supra,* does so in very general and comprehensive terms, without limiting the scope of its language. But what it says is said in relation to the language used in instruction No. 4, particularly the italicized words in the above quotation therefrom, and should be interpreted and applied in the light of that fact.

There are several other assignments of error made, but the only other assignment which it is necessary to notice is that the court erred in not setting aside the verdict as contrary to the evidence and in not entering up judgment for the defendant. This assignment of error is also well made.

■ Where the occasion is qualifiedly privileged the words spoken are not actionable, even though untrue and defamatory, unless the scope of the privilege of the occasion is exceeded or the words are spoken with *actual* malice; and in such cases the burden is upon the plaintiff to prove that the words were spoken with *actual* malice. *Chaffin* v. *Lynch,* 83 Va. 106, 1 S. E. 803, and *Id.,* 84 Va. 884, 886, 6 S. E. 474; *Brown* v. *Norfolk & W. Ry. Co.,* 100 Va. 619, 42 S. E. 664, 60 L. R. A. 472; *Chalkley* v. *Atlantic Coast Line R. Co.,* 150 Va. 301, 143 S. E. 631; *Powell* v. *Young,* 151 Va. 985, 144 S. E. 624 (opinion on rehearing), 151 Va. 1003, 145 S. E. 731; *Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874, 156 S. E. 429.

■ The evidence shows as a matter of law that the occasion was privileged; and the fact that Miss Lane accidentally or casually may have happened to overhear what was said by Feldman to Mrs. Mason is not sufficient to deprive what was said of the protection of the privilege of the occasion. *Toogood* v. *Spyring,* 1 Crompton, Meeson

& Roscoe 180, at page 192; *Conrad* v. *Roberts*, 95 Kan. 180, 147 Pac. 795, Ann. Cas. 1917E, 891, L. R. A. 1915E, 131; *Phillips* v. *Bradshaw*, 167 Ala. 199, 52 So. 662; Odgers on Libel and Slander, page 245; *Fields* v. *Bynum*, 156 N. C. 413, 72 S. E. 449. And we are of opinion that the evidence is not sufficient to show that the words used transcend the scope of the privilege of the occasion or were spoken in bad faith and with *actual* malice. In the instant case the evidence is quite as consistent with good faith and the absence of actual malice as it is with the presence of actual malice.

■ It is not sufficient in a case such as this that the evidence be consistent with the existence of actual malice, or even that it raise a suspicion that the defendant might have been actuated by malice or a doubt as to his good faith. It must affirmatively prove the existence of actual malice, and to do so it must be more consistent with the existence of actual malice than with its non-existence, and at least raise a probability of its existence. *Chesapeake Ferry Co.* v. *Hudgins*, 155 Va. 874, at page 907, 156 S. E. 429, and authorities there cited; *Somervill* v. *Hawkins*, 3 Eng. Law & Eq. Rept. 503, at page 506, 15 Jur. 450.

In *Somervill* v. *Hawkins, supra,* a case in which the language used by the defendant was much stronger than that in issue in this case, after holding the occasion qualifiedly privileged, the court well states the law in such cases as follows:

" * * * it was for the plaintiff to show affirmatively that the words were spoken maliciously; for the question, being one the affirmative of which lies on the plaintiff, must, in the absence of evidence, be determined in favor of the defendant. On considering the evidence in this case, we cannot see that the jury would have been justified in finding that the defendant acted maliciously. It is true, that the facts proved are consistent with the presence of malice as well as with its absence. But this is not sufficient to entitle

the plaintiff to have the question of malice left to the jury, for the existence of malice is consistent with the evidence in all cases except those in which something inconsistent with malice is shown in evidence; so that to say that in all cases where the evidence was consistent with malice it ought to be left to the jury, would be, in effect, to say that the jury might find malice in any case in which it was not disproved, which would be inconsistent with the admitted rule, that in cases of privileged communications malice must be proved, and therefore its absence presumed till such proof is given. It is certainly not necessary, in order to enable a plaintiff to have the question of malice submitted to the jury, that the evidence should be such as necessarily leads to the conclusion that malice existed, or that it should be inconsistent with the non-existence of malice; but it is necessary that the evidence should raise a probability of malice, and be more consistent with its existence than with its non-existence."

The judgment of the trial court will be reversed, the verdict of the jury set aside, and final judgment here entered for the defendant.

*Reversed.*